CASE 47.—PROSECUTION AGAINST JOHN SIMPSON FOR THE MURDER OF BUD CASEY.—June 28.

# Simpson v. Commonwealth

Appeal from Garrard Circuit Court.

W. C. Bell, Circuit Judge.

Defendant convicted and appeals.—Reversed.

1. Criminal Law—Evidence—Accomplices.—The testimony of accomplices jointly indicted is competent, although the indictment against them be not dismissed.

2. Same—Appeal—Examination of Accomplice—Prejudice.—In a prosecution for homicide, an accomplice having consented to testify, the court admonished him that he was under no obligation to do so, and if he did not care to answer any question he would be protected. Defendant thereupon, in the absence of the jury, asked him several questions as to his willingness to testify and whether he had been offered or expected immunity, which questions the court refused to allow. On the witness' examination before the jury he did not avail himself of his privilege, but testified, and answered defendant's counsel that no one had suggested or promised that, if he would testify, he should be released. Held, that defendant was not prejudiced by the court's admonition of the witness, nor by the exclusion of the questions asked of him in the absence of the jury.

3. Same—Corroboration.—Cr. Code Prac., Sec. 241, provides that conviction cannot be had on the testimony of an accomplice, unless corroborated, and the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof. Held, that where, in a prosecution for homicide, the only corroboration of an accomplice with reference to accused was the latter's admission to two witnesses that he was present at the house of deceased on the night prior to the time it was burned, and when deceased was killed, and his admission to another person that he (accused)

knew something about it, such corroborating evidence was insufficient to sustain a conviction.

R. H. TOMLINSON, WILLIAM HERNDON and J. M. ROTHWELL for appellant.

N. B. HAYS, Attorney General, and CHARLES H. MORRIS for the Commonwealth.

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Reversing.

At the November term, 1906, of the Garrard circuit court, John Simpson, Jones Simpson, and Curt East were jointly indicted for the murder of Bud Casey; the indictment charging each defendant with the main offense and each of the others as an aider and abettor, and further charging that the murder was committed by either striking the deceased with a blunt instrument or by burning his house. When the case was called for trial Curt East asked for a separate trial. John Simpson and Jones Simpson were then tried, convicted, and their punishment fixed at confinement in the penitentiary for 21 years. John Simpson alone appeals.

The following facts may be deduced from the evidence: About 1 o'clock on the morning of Monday, September 17, 1906, the neighbors were attracted to the house of Bud Casey by the light of flames. When the neighbors arrived on the scene they found the house almost destroyed. They also found the body of Bud Casey "15 inches from the wall and 18 inches from the corner of the house, and it lay almost straight, but a little curved to the right, throwing the right side of his head to the fire." There was a hole in the top of Casey's head, indicating that he had either been struck on the head by some blunt

instrument or had injured himself in falling. Casey's body was not burned to any great extent. His clothes were burned off, and the grass was green under his body, whilst it was burned and scorched in all other places around him. The body of Nath Taylor was found inside of the building after the fire had subsided. He was so badly burned that he was recognizable only from prominent marks on his person.

Curt East, one of the parties jointly indicted for the murder of Casey, swears that on the morning before the house was burned he was at the home of Bud Casey, having gone there with Jones Simpson. Nath Taylor gave Jones Simpson a dollar to buy whisky with, and, upon his insisting, Curt East went to buy and did buy the whisky, and they took it to Bud Casey's house. The whisky was distributed, and they all partook of it pretty freely. At 12 o'clock some discussion was had about getting dinner or something to eat. They all stayed around the house during the afternoon. Other persons came in at different times. About 3 o'clock Jones Simpson and witness went to the house, having been out in the yard or orchard engaged in some sort of game, and when they arrived there Casey had the door locked, and Jones, who had a stick in his hand, told Casey that if he did not open the door he would burst the door open. Casey finally unlocked the door, and the witness, Nath Taylor, and Jones Simpson went for some cider, but did not get any at that time. Casey was under the influence of liquor, and witness tried to get him away for some purpose. He started away, but lay down under a tree, and Jones Simpson, went to him and brought him back to the house. About this time John Simpson, the appellant, came along and joined the crowd, and remained with them until 9 or 10 o'clock. Jones Simpson lost his hat. They all looked

for it, but could not find it.  Jones Simpson told
Bud Casey to go after some matches, and if he
did not go and get the matches, God damn him, he
would kill him.  Casey did go to Dick Lamay's
and tried to get the matches.  Failing there, he went
to Dan East's and got some matches.  While Jones
Simpson was trying to get Casey to go after matches,
he was cursing him and kicked him two or three times.
Nath Taylor and Jones Simpson also quarreled that
evening.  After they got back to the house Jones
Simpson and Nath Taylor went upstairs together, and
while up there Nath Taylor was heard to groan and
call out, "Oh! Lordy, don't hurt me."  He was not
seen by witness any more after that.  John Simpson
and witness were in the lower part of the house while
this was going on.  Bud Casey was with them.  Jones
came down into the room where the other parties
were, grabbed up a lot of straw, and put in the stove,
poured oil on it and also on the floor, and set fire
to the straw in the stove.  Bud Casey went to bed and
lay down.  After the fire was started, Jones Simpson
told Casey to get up and hunt his hat or he would kill
him.  Witness found Jones' hat, and Jones grabbed
a stick of wood from the fire and threw and hit Casey
and set the bed on fire.  That fire, as well as the fire
upon the the floor, was put out.  John Simpson and
Jones Simpson then grabbed Casey and took him up-
stairs.  They remained up there some 15 or 20 min-
utes.  While up there witness heard them walking
around; but, upon cross-examination, he also stated
that he heard some groaning.  When John Simpson
and Jones Simpson came down, they and witness
started off together.  John Simpson separated from
them and started toward his home.  After witness and
Jones Simpson had gone some distance, the attention

of East was attracted by a light, and on looking back he discovered it was Casey's house, and that it was burning in the upstairs portion of the house. Witness asked Jones Simpson if they had left the house on fire so it would burn them up, and he answered: "I don't care if it does burn down. I have got them locked up anyway." Witness also states that Jones Simpson said two or three times during the afternoon: "Bud, God damn it, I will kill you, and set the house on fire, and walk off in the light of it." The next morning John Simpson came over to Jones Simpson's house and said, in substance: "We have played hell. We will be arrested before dinner." And John then began to fix up a story for them to tell in order that they might escape.

Many other witnesses testified, but none of them mentioned the name of John Simpson, except Calvin Locker, Thompson Hill, and Prentice Walker. Calvin Locker said that he met John Simpson between 8 and 9 o'clock the morning after the fire, and John said that he left the house between 11 and 12 o'clock, and nobody was there except Nath Taylor and Curt East. Thompson Hill said that, according to his remembrance of it, John Simpson testified before the coroner's jury that he left the house between 8 and 9 o'clock. Prentice Walker testified that John Simpson said he was in jail for nothing, and that he told him (Walker) that he (John Simpson) knew something about it.

The following errors are assigned: (1) The indictment against Curt East should have been dismissed before he was permitted to testify. (2) The admonition of the court to the witness East went further than the law permits, and witness East was not permitted to testify as to any immunity or promises held out to

him by the Commonwealth. (3) The evidence of the accomplice, East, was not sufficiently corroborated.

The question involved in the first error assigned has already been passed upon by this court in the case of Powers v. Com., 114 Ky. 237, 24 K. L. R. 1007, 70 S. W. 644, 1050, 71 S. W. 494, wherein the court held that the testimony of accomplices jointly indicted is competent, although the indictment against them be not dismissed. After the witness East had consented to testify, the court admonished him as follows: "And you don't have to testify at all about anything that occurred down there if you don't wish to. Not only that, but if you, in the course of the examination, come to any question that you don't want to answer, you don't have to answer it, and you will just signify to the court, and you will have full protection. Understand that, in the inception of the examination and at any time during your examination, if you don't want to answer the questions, signify it to the court, and you will be protected." Counsel for appellant then asked several questions in reference to the witness' willingness to testify, and also in reference to whether or not he had been offered or expected immunity for testifying. To each of these questions the court sustained an objection, but counsel for appellant made no avowal as to what his answers would be. It appears, however, that the admonition of the court and the question thereupon asked, as referred to above, all took place without the jury being present. When the witness was placed upon the stand and began his testimony, he never once availed himself of the privilege offered by the court, but testified freely and fully. Upon the cross-examination witness was asked and aswered the following questions: "Q. Did anybody ever make the sugges-

tion to you that if you told this that you could get out of it? A. They did not; no, sir. Q. Or that it would be your only way to get out of it? A. No, sir. Q. Not at any time? A. No, sir." While we do not think that any error was committed by the court in sustaining objections to the questions asked of wit-. ness not in the presence of the jury, yet, even if it was error, the propounding and answering of the foregoing questions, which virtually covered the same points involved in the questions asked him when the jury was not present, were sufficient to overcome the effect of the erroneous ruling. We do not think, therefore, that either the admonition of the court or the objections sustained to the questions referred to prejudiced in any way the rights of appellant.

The only other question remaining, to be decided is whether or not the testimony of the accomplice, East, is sufficiently corroborated. It is the contention of the Commonwealth that East is not an accomplice; but, taking his own version of the affair in connection with the statements if other witnesses who have testi- fied, we have reached the conclusion that he is an accomplice, and that his testimony must be regarded as that of an accomplice. In view of the instructions given to the jury, the trial court evidently entertained the same opinion. We will proceed, first, to discuss what kind of corroboration is necessary. Section 241 of the Criminal Code of Practice is as follows: "Con- viction cannot be had upon the testimony of an accom- plice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof." In interpreting this' section, this court, in Bowling v. Commonwealth, 79 Ky. 604,

said: "It is clear, under the section of the Code quoted, that the uncorroborated testimony of an accomplice is wholly insufficient to convict the accused of crime, or any one of its constituent elements, or to render admissible any confessions or admissions of the parties which depend upon and must be preceded by evidence of the conspiracy, unless other evidence besides that of the accomplice is produced tending to prove a conspiracy and connect the accused therewith; and evidence merely showing that the offense was committed and the circumstances thereof is as insufficient for that purpose, as it would be to connect the accused with the commission of the offense itself." In Miller v. Commonwealth, 78 Ky. 15, 39 Am. Rep. 194, we have the following: "The intent and meaning of the statute is that the corroboration must extend to every fact necessary to establish the fact that the offense charged was committed and that the prisoner was the perpetrator." Russell on Crimes (2d Ed.), p. 964, lays down the rule as follows: "There is a great difference between confirmation as to circumstances of the felony and those which apply to the individual charged. The former only prove that the accomplice was present at the offense. The latter show that the prisoner was connected with it. This distinction ought always to be attended to." In Chambers v. State (Tex. Cr. App.), 44 S. W. 495, the court says: "It makes not the slightest difference how thoroughly the corroboration of an accomplice may be in regard to facts related by him, yet unless there is some proof, independent of his testimony, tending to connect the defendant with the commission of the crime, there is no sufficient corroboration." In Commonwealth v. Bosworth, 22 Pick (Mass.), 397, it is said: "We think the rule is that the corroborative evidence must relate to some portion of the testimony

which is material to the issue. To prove that an accomplice had told the truth relative to the irrelevant and immaterial matters which were known to everybody would have no tendency to confirm his testimony involving the guilty party on trial." In the case of State v. Willis, 9 Iowa, 582, the court said: "The corroborating evidence in this case tended merely to show that an offense had been committed and the manner and circumstances of its commission, but had no tendency to connect the defendant therewith, unless it should be held sufficient to convict a man of burglary that he is seen drunk and in company with a burglar at or near the time and place when and where the burglary is committed. However well-grounded a suspicion this may justly authorize, we do not think it affords the corroborating testimony contemplated by the statute."

The testimony of the accomplice, East, is corroborated as to several unimportant and immaterial matters; but the only corroboration of his testimony in reference to John Simpson is the admission of Simpson to two witnesses that he was present at the house of Bud Casey on the night prior to the time it was burned, and his admission to another person that he knew something about it. The presence of John Simpson at the house of Bud Casey has no more tendency to connect John Simpson with the murder of Casey than did the sight of the man in company with a burglar have to convict him of burglary; and surely the statement that he knew something about it could not be deemed sufficient to connect him with the crime, for, if that were the case, every witness of a crime, if accused by an accomplice, would be in danger of having his testimony interpreted in the same way. It may be that upon a new trial additional facts will be

Simpson v. Commonwealth.

developed; but, after an examination of the record before us, we are of the opinion that the testimony of the accomplice, East, is not sufficiently corroborated by other testimony tending to connect appellant with the crime with which he is charged, and that the trial court should have peremptorily instructed the jury to acquit appellant.

Judgment reversed, and cause remanded for new trial consistent with this opinion.