### LANCASTER et al. v. GREEN et al.
### (No. 10072.)

(Court of Civil Appeals of Texas. Fort Worth. Dec. 2, 1922.)

Railroads ⨀⇒316(2)—Negligence in operating engine at dangerous speed dependent on locality.

In an action for personal injuries at a street crossing, a finding of negligence based on operation of the engine at a high and dangerous rate of speed could not be sustained, in the absence of a showing as to whether the street was a much used street for public travel, or whether it was in some remote portion of the city infrequently used by the public.

Appeal from District Court, Taylor County; W. R. Ely, Judge.

Separate actions by Mark Green and another against J. L. Lancaster and another, receivers of the Texas & Pacific Railway Company, consolidated and tried together. Judgments for plaintiffs, and defendants appeal. Reversed in both cases, and remanded.

Wagstaff, Harwell & Wagstaff, of Abilene, for appellants.

Ben L. Cox, of Abilene, for appellees.

DUNKLIN, J. A switch engine operated by employés of J. L. Lancaster and Chas. L. Wallace, receivers of the Texas & Pacific Railway Company, collided with an ice wagon, drawn by mules, in which Ed Leake and Mark Green were riding, and they sustained personal injuries as a result of that collision, The accident occurred at a point where a public street of the city of Abilene, on which plaintiffs were traveling, was crossed by the main track and several switch tracks of the railroad. This appeal is prosecuted by the receivers from judgments recovered by Leake and Green, the two suits instituted by those two plaintiffs having been consolidated and tried at the same time.

The case was tried before a jury, who returned findings upon special issues submit- ted. One allegation of negligence was to the effect that defendants' box cars had been placed in such close proximity to the crossing as to obscure the view of persons approaching it from the direction which plaintiffs approached on the occasion of the accident, and another allegation of negligence was that defendants' employés failed to sound the whistle and ring the bell of the locomotive as they approached the crossing. Each of those charges of negligence was relied upon as a basis for recovery, but the jury returned findings adverse to plaintiffs on both of those grounds.

Plaintiffs further alleged, as a basis for recovery, that as the switch engine approached the crossing it was operated at a high and dangerous rate of speed and that in so operating it defendants' employés were guilty of negligence. That allegation of negligence was sustained by the jury. There was another finding adverse to the defense of contributory negligence on the part of the plaintiffs as pleaded by the defendants. Upon the finding of negligence on the part of the defendants in the respect just stated, judgment was rendered in favor of plaintiffs. Appellants insist that the testimony was insufficient to warrant a finding of negligence with respect to the speed of the switch engine.

Several witnesses for the defendants testified that the engine was not going faster than six or eight miles an hour when it approached the crossing. Plaintiff Leake testified that the switch engine was going at a "fast rate of speed" as it approached the crossing, and he estimated the speed at approximately 15 or 20 miles an hour. In briefs filed by appellees, the following is said:

"Plaintiff Green estimated the speed of the train about the same that plaintiff Leake did, but both of these witnesses were merely guessing at it, as they both testified that they did not see the switch engine or hear it until the mules were in about two feet of the main line on which the switch engine was running; that they could not accurately judge the rate of speed of the switch engine, and their statement that it seemed that it was coming very fast is about as definite as their testimony could be fixed. They could have said 50 miles an hour as easily as they said 20, and still it would have been a guess, as they did not see the engine until it was practically upon them and not having seen the engine run any considerable distance naturally, they could not judge accurately its speed."

No witness, other than plaintiffs, estimated the speed of the engine higher than 8 miles per hour, but appellees insist that there was further evidence to sustain the finding of the jury that the engine was being operated at a high and dangerous rate of speed, including the testimony of the witness Hampton, to the effect that, within a day or two after the accident, DeMarce, a witness for the defendants, who was a switchman and

riding on the back of the engine at the time of the accident, told witness that the engineer operating the switch engine threw it wide open and was going so fast that it could not be stopped as it approached the crossing after discovery of the wagon, although the engineer did all he could to stop it. That testimony was evidently introduced to discredit the testimony of DeMarce, a witness for the defendants, and who had testified when introduced by them that the engine was not traveling faster than 8 miles an hour, and who testified further that he did not make the statement to the witness Hampton which the latter attributed to him. Appellees also cite the testimony of defendants' witness Myers, an employé of the defendants, who was riding on the engine at the time of the accident, that he saw the ice wagon when the engine was at a distance therefrom of 40 or 50 feet, that the front feet of the mules were then on one of the rails of the track, and that the engine traveled, with the brakes set, about 40 or 45 feet before it stopped, after it had struck the wagon, although he estimated the speed of the engine to be 6 or 8 miles an hour. Appellees insist that the distance traveled after the discovery of the wagon is a circumstance tending to show that the engine was moving rapidly as it approached the crossing.

While the testimony showed that the crossing was at the termination of a public street of the city of Abilene, and had been used as such by the traveling public for 25 or 30 years, yet no testimony was introduced tending to show the frequency of such use; in other words, there was no testimony tending to show whether that street at that place was a much used street for public travel, or whether the same was in some remote portion of the city, infrequently used by the public. In the absence of such proof, there was no sufficient basis for the finding by the jury that the engine was being run at such a high and dangerous rate of speed as to constitute negligence warranting recovery by plaintiffs, even though it could be said that the "guess" made by the two plaintiffs of 15 or 20 miles an hour as the speed of the engine was sufficient proof that it was running at that rate of speed. Whether or not the operation of the engine at that rate of speed was negligence would depend entirely upon the extent to which the street was used by the public. For aught that appears in the record, although the crossing in question was within the corporate limits of the city, the same may not have been more frequently used than a highway crossing in the country at some place remote from any city or town. C., R. I. & G. Ry. v. Loftis (Tex. Civ. App.) 168 S. W. 403; Fort W. & Denver City Ry. v. Harrison (Tex. Civ. App.) 163 S. W. 332.

For the reasons stated, the judgments in both cases are reversed and the causes remanded.