CASE 5—INDICTMENT—JUNE 26.

## Miller & Smith v. The Commonwealth.

| Kentucky | |
|---|---|
| 78 | 15 |
| .f126 | 448 |
| 78 | 15 |
| f131 | 411 |
| 78 | 15 |
| 132 | 677 |

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. If by trick or artifice the owner of property is induced to part with the possession only, still meaning to retain the right of property, the taking by such means is a larceny; but if the owner part with the possession and right of property also, the offense will not be larceny, but obtaining goods by false pretenses.

2. Upon the question of conspiracy the proof is insufficient.

3. The Court improperly allowed evidence that other persons than the prosecutor had been similarly cheated in appellants' faro bank.
4. The declarations of one conspirator are only admissible against the others when made before the object of the conspiracy is accomplished.

W. LINDSAY AND W. R. KINNEY FOR APPELLANT.

1. The Court erred in permitting evidence that other persons than Lyons had been roped into appellants' faro bank. (34 Iowa, 446; 55 N. Y. Rep., 565; Litt. Selected Cases, 497; Greenleaf's Ev., vol. 1, 111.)
2. The third instruction given for appellee is error. (Sec. 1, art. 1, chap. 47, Gen. Stat.; 2d vol. Russell on Crimes, secs. 21, 24; Elliott v. Commonwealth, 12 Bush, 176.)

B. W. DUKE FOR APPELLEE.

1. When the mere possession of goods is obtained *animo urandi*, and the title not parted with by the owner, the fraudulent detention is larceny,. not obtaining goods by false pretenses. (2 Wharton, 1848; 53 N. Y., 111; 5 Rich., 237; 24 Gratt., 563; 6 Miss., 593; 1 Porter, 118; 3 Heisk. S. C.; 43 Ill., 397.)
2. The evidence that other parties were "roped in" and swindled in appellants' bank was competent in this class of cases.

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

The indictment accused the appellants of the crime of grand larceny, committed in manner and form as follows, to-wit: "The said Charles Miller and A. P. Smith, in the said county of Jefferson, on the 1st day of February, 1879, and before the finding of this indictment, feloniously did combine, confederate, and conspire to, and did feloniously steal, take, and carry away thirty-nine dollars and fifty cents in money, lawful currency of the United States, the property of Alfred Lyons, contrary to the form of the statute. in such cases made and provided, and against the peace and dignity of the Commonwealth of Kentucky."

Without demurring to the indictment, the appellants consented that a formal arraignment might be dispensed with,. and pleaded not guilty. They were found guilty and sentenced to be imprisoned in the penitentiary for two years, and prosecute this appeal to obtain a reversal of that judgment.

Miller & Smith v. The Commonwealth.

The prosecutor, Lyons, testified that he was drunk, in a saloon in Fifth street, in the city of Louisville; that he fell into conversation with the prisoner, A. P. Smith; that he and Smith left the saloon together, and, without witness knowing where he was going, Smith took him where the prisoner, Miller, was dealing "faro." That Smith asked him (witness) for some money to bet on the game; that he gave Smith a ten dollar note, which he lost. That Smith then took from his pocket, without his consent, more money, which was bet and lost in the same way. That he knew nothing of the game, never having seen it played but once before; that he could not tell when money was lost or when it was won.

Richardson testified that he was in the saloon in Fifth street when the prosecutor came in. That the prosecutor was drinking, and treating everybody around there, and had his money out. That the prosecutor asked some one to figure some for him, and was referred to Smith as a person capable of doing the figuring. That he and Smith figured awhile and then left the saloon and went to the *faro* bank kept by Miller. Witness followed them into the room where the bank was, and the prosecutor gave Smith a ten dollar note at three different times; but he did not see Smith take any money from the prosecutor's pocket. That Smith bet and lost all the money he got from the prosecutor, and the latter then left the room.

Richardson also stated that he knew the character of the game dealt by Miller, and that both he and Smith were partners of Miller; that the game was what is called a "brace" game, and was so conducted that it was impossible for the better to win. That Miller and his accomplices.

knew exactly how to bet money so as to win or lose; that Smith knew which were to be the winning cards. That he (witness) and Smith were "ropers" for Miller's game, and went out and induced whoever they could to go into the bank and bet, or let them bet, his money. They were not looking for Lyons; but he was brought in under the general understanding, and his money was won and afterwards divided out between Miller, Smith, witness, and one Forst, according to the share agreed upon between themselves.

He also stated, over the objection of the prisoners' counsel, that he received his share from Forst some time after the money was won, and that Forst told him it was his share of the money won from Lyons, and that other persons had been roped into Miller's bank by the same parties, and defrauded of their money in the same way that Lyons was, and the money divided out, he, witness, receiving his share.

The Court instructed the jury, in substance, that if the prisoners feloniously conspired together to cheat Lyons out of his money, and, in pursuance of such conspiracy, and for the purpose of so cheating him, did set up a game at which Lyons' money was to be bet, and that it was understood between them that the money was to be bet by Smith in such way that it would be certainly won by Miller, and that it was so bet and won in accordance with the understanding between them, they were guilty as charged.

The rule as stated by Russell (2 Russell, 29) and approved by this Court is, that if, by trick or artifice, the owner of property is induced to part with the possession only, still meaning to retain the right of property, the

Miller & Smith v. The Commonwealth.

taking by such means will amount to larceny; but if the owner part with not only the possession of the goods but the right of property in them also, the offense of the party obtaining them will not be larceny, but the offense of obtaining goods by false pretenses.

Applying this test to the case in hand, the first inquiry is, did the prosecutor part with his right of property in the bills handed to Smith to be bet on the game being dealt by Miller.

It is contended that he did, first, because the statute declares that money advanced or loaned at the time of betting, to be used in betting, cannot be recovered back, and second, that when the money was lost, the prosecutor went away without making any objection to its loss or any claim to it.

The money was delivered to Smith to be bet for the prosecutor, and there was certainly no intention on his part to give up the money until it should be lost on the game. Until that occurred, he continued to be the owner of the money, and might have demanded its return. He had not loaned it to Smith or advanced it to him upon any contract, express or implied, by which Smith became his debtor. The money was in Smith's hands as a mere custodian or agent for the prosecutor. It continued to be the prosecutor's money. It was handed to Smith to be bet for him, and not for the use or benefit of Smith in any way. He no more parted with his property in the money than if, instead of going to a *faro* bank and handing Smith the money to bet for him on the game, they had gone into an auction room and he had handed the money to Smith to make purchases for him. In this latter case no one will doubt but that, if the money had been obtained for the ostensible purpose sup-

posed, but with the actual felonious intention not to use it for that purpose, but to convert it to his own use, he would have been guilty of larceny. (2 Russ., 42, *et seq.*)

If it was not the intention of the prosecutor, when he handed the bills to Smith, to part with his property in them, but merely to part with the possession, for the purpose of having them betted on the game, and Smith received them, not for the purpose of betting *bona fide*, but with the intent to lose them on a fraudulent game concerted between himself and Miller or between themselves and others, and did so bet and lose the money, Smith was guilty of larceny; and if Miller knew that Smith had obtained the money from the prosecutor to bet against the bank, and, by preconcert between himself and Smith, Smith knew which cards would lose and which would win, and it had been agreed that he should bet on those they knew would lose, and this was done with the design to deprive the prosecutor of his money, and he was so deprived of it, Miller is also guilty.

This view is supported by the case of Rex v. Horner (1 Leach, 270), cited in Russell (vol. 2, p. 45), where it appeared that the prisoner decoyed the prosecutor into a public house, and there introduced the play of cutting cards, and that one of them prevailed upon the prosecutor, who did not play on his own account, to cut the cards for him, and then, under pretense that the prosecutor cut the cards for himself and had lost, another of them swept his money off the table, and went away with it. It was considered to be one of those cases which should be left to the jury to determine *quo animo* the money was obtained, and which would be felony if they

should find that the money was obtained upon a preconcerted plan to steal it.

When the money was given to Smith to bet, it ought not to be assumed that the prosecutor meant more than that it should be hazarded on the game, and to part with his property if he lost. But if, by concert between Smith and Miller, they knew, before the cards were dealt, that it would be lost, they are guilty precisely as if by concert between them Smith had obtained the money to bet, and immediately, without going through the mere form of betting, had divided it between them. Acts and intentions which would otherwise have been larceny, cannot be rendered innocent or be made to constitute a different crime by the idle form of putting the money upon cards which they knew beforehand must lose.

That the prosecutor went away without making any objection to the loss of the money, or demanding its return, is wholly immaterial. When the money was lost the crime was complete, and the subsequent conduct of the prosecutor could not condone it.

It was also objected that there was no evidence, beside that of Lyons, which conduced to establish a conspiracy, and that, under sections 241, 242 of the Code, the Court should have directed an acquittal.

Section 241 provides, that "a conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show that the offense was committed, and the circumstances thereof."

And section 242 provides, that "in all cases where, by law, two witnesses, or one witness and corroborating cir-

cumstances, are requisite to warrant a conviction, if the requisition be not fulfilled, the Court shall instruct the jury to render a verdict of acquittal, by which instruction they shall be bound."

There could be no conviction without proof of a conspiracy between the appellants. To establish its existence, there was no evidence beside that of Richardson, and the Court should, of its own motion, have directed an acquittal.

It is contended, however, that Richardson is not an accomplice within the meaning of section 241. He testified that he was the partner of Miller and Smith; that an arrangement existed between them under which the prosecutor was brought in and deprived of his money, and that he received a share of it under the existing arrangement.

An accomplice is one of several equally concerned in the commission of a felony. (Tomlin's Law Dictionary, title "Accessory.")

The term, in its fullness, includes all concerned in the commission of a crime—all *particeps criminis*, whether they are considered in strict legal propriety as principals in the first or second degree, or merely as accessories before or after the fact. (Bouvier's Law Dictionary, title "Accomplice.")

Whether the term, as used in the Code, would be construed to embrace all in any way concerned as accessories after the fact, we do not decide. But Richardson was, according to his own statement, a principal, in the second degree at least, and comes within the meaning of the statute.

The facts testified to by the prosecutor do not tend to prove a conspiracy. He corroborates the accomplice in respect to some of the circumstances of the offense; but upon the question of conspiracy he is uncorroborated. The

intent and meaning of the statute is, that the corroboration must extend to every fact necessary to establish the fact that the offense charged was committed, and that the prisoner was the perpetrator.

We are also of the opinion that the Court erred in allowing the Commonwealth to prove that other persons had been similarly swindled in Miller's bank. The effect of this would be to prove the prisoner guilty of the crime in question, by proving that he had previously committed similar crimes.

There was also error in allowing evidence of Forst's declarations to go to the jury. The declarations of one conspirator are only admissible against the others when made before the object of the conspiracy is accomplished.

The declarations proved were made after the offense charged was complete, and ought not to have been allowed to go to the jury.

Judgment reversed, and cause remanded for further proper proceedings.