## Howard v. Commonwealth.

(Decided September 27, 1929.)

(As Modified, on Denial of Rehearing, November 22, 1929.)

CAUDILL & TACKETT, O. C. HALL, W. W. WILLIAMS and W. A. DAUGHERTY for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

On December 13, 1928, Yancy Ligon was slain. Jack Crum and Harry Howard were by indictment charged with having committed this murder pursuant to a conspiracy formed for that purpose. They sought separate trials, and the commonwealth elected to try Howard, and the trial resulted in his conviction and a sentence of life imprisonment in the penitentiary.

He seeks a reversal upon several grounds, which we shall discuss in the same order that he has presented them:

First, he complains of the instruction upon self-defense. It is evident that in preparing that instruction the court followed instruction No. 5 prepared by this court in Gambrell v. Com., 130 Ky. 513, 113 S. W. 476.

That instruction correctly presented to the jury his right of self-defense if no conspiracy existed, but he now contends that he was still entitled to the right of self-defense, even though the jury should find and believe from the evidence that a conspiracy then existed between Crum and Howard to kill Yancy Ligon provided they had not sought out Yancy by going where they expected he would be, and that upon a chance meeting Yancy Ligon had attacked Howard and put his life in peril, but we cannot agree with him.

Such an instruction would have submitted a theory not supported by the evidence.

There is no witness who testifies to such a state of facts. It is true Howard testifies this shooting occurred at a chance meeting, after Ligon had put his life in peril; but he also testifies no conspiracy then existed. His theory of the case was presented by the self-defense instruction which was No. 6. A defendant, by testifying himself, frequently obviates the necessity of giving instruction upon certain features, just as was pointed out in Frasure v. Com., 169 Ky. 620, 185 S. W. 146, where Frasure by his testimony obviated the necessity of instructing on manslaughter and self-defense.

Howard insists he was entitled to a directed acquittal; hence we shall state briefly the evidence against him:

A bridge was being built across the river at West Prestonsburg. Ligon was in charge of that work. Crum applied to Ligon for employment. Ligon refused to employ him. Crum asked Ligon why he employed others, but did not employ him. Ligon told him he did not hire drunkards, and a fight occurred between them. This was about two weeks before the killing.

In the early part of the night of the killing, Ligon and Howard had a fight. They were separated, and Howard left, saying, as he did so, "I'll be back." Soon he and Crum were going about over the town trying to borrow a pistol and cartridges, and near 12 o'clock they came to the place where this work was going on. Crum stopped about 20 or 25 feet from the boilers. Howard stopped at the boilers, and stood there with his pistol drawn.

Some one told Ligon Howard was there, and he went out and greeted him by saying, "Hello! Harry." This was followed by the report of three shots fired by How-

ard, which so wounded Ligon that he died shortly thereafter.

Howard has another and very different account of all this, but clearly this evidence for the commonwealth was sufficient to take the case to the jury.

Howard objected to the evidence of certain witnesses about things said by Crum, and to evidence Crum was trying to borrow cartridges; but in each instance the court admonished the jury to consider this evidence only in the event they believed a conspiracy had been established.

His next complaint is directed to certain language used by the attorney who made the closing argument for the commonwealth. We have examined that language, as shown in the bill of exceptions, and there is no merit in his contention.

The judgment is affirmed.