## Fletcher v. Commonwealth.

(Decided June 9, 1931.)

R. L. POPE, C. B. UPTON and J. B. CAMPBELL for appellant.

J. W. CAMMACK, Attorney General, and JAS. M. GILBERT, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

In the early morning of Monday, July 21, 1929, neighbors found the dead bodies of James Corum, aged about 78 years, and his wife, Malissa Corum, in their cottage home in the village of Artemus, Knox county. Their mouths were stuffed with rags extending down their throats. James Corum had been shot and choked. It appears also that the victims had been struck with an iron bar found in the room. Their trunk had been torn open and the room ransacked. Disorder indicated that a desperate struggle had taken place. The evidence is pretty conclusive that the murder occurred about midnight, Saturday, July 19th. It was generally reputed

in the country that these old people had a considerable sum of money in their room, and the motive was unmistakably robbery.

Shortly thereafter several persons were arrested charged with the crime, including Robert Fletcher and Dewey Bain; William Fletcher, a brother of Robert, was indicted with them for the murders.

In January, 1930, the appellant, Willam Fletcher, was arrested in Jasper, Fla., and was brought to trial at the June term, 1930, on the indictment for the murder of James Corum. Upon conviction he was sentenced to life imprisonment. The evidence against the accused was circumstantial, supported by testimony of admissions of having committed the crime. The evidence in defense was that the accused on the night of the murder was in Lexington, where he had been staying. Alibis were also shown for the other two men with whom he was charged with having entered into a conspiracy to commit the crime. It is not necessary to relate the voluminous evidence, it being sufficient for the purposes of this opinion to say that under it the jury was authorized to return a verdict of guilty.

The appellant claims that he did not have a fair trial, and numerous errors of law are assigned in his plea for a reversal of the judgment. They will be stated as disposition is made of them respectively.

1. At the calling of the case a motion was made to have a venire summoned from another county on the ground that it was impossible for the defendant to secure a jury free from bias in Knox county because of the widespread interest and intense opposition. Section 194, Criminal Code of Practice. It was also shown by the affidavits filed in support of the motion that there had been three trials growing out of the murder, two of the defendant's brother, and one of Dewey Bain. One of those juries had been chosen from Knox county, one from Clay county, and the other from Whitley county. This is a matter resting in the discretion of the trial judge, and if he has abused that discreton, under the terms of secton 281, Criminal Code of Practice, his action is not subject to review by this court. Neal v. Commonwealth, 233 Ky. 533, 26 S. W. (2d) 23. It is different where the order is with reference to a change of venue, as this court does have the right to review such action. The cases cited by the appellant relate to such an order and are therefore not in point.

2. After the twelve men had been accepted by both the commonwealth and the defendant, for some reason not manifested in the record, the trial of the appellant was suspended and another murder case tried. Six of the panel which had been chosen were used in that trial and were separated from the others for a day and a half and kept at a different place in the city. The defendant promptly filed a vigorous motion to discharge the jury and supported it with affidavits. The facts thus displayed were in no way controverted. Indeed, the order of court filing the motion declared that they did exist and also that the motion was made before the jury was sworn.

It is difficult to understand the action of the trial court, which was in direct violation of section 244, Criminal Code of Practice, providing that on the trial of offenses punishable capitally or by life imprisonment the jurors "after they are accepted" shall be kept together.

We have recently had presented quite a similar condition and held it to be reversible error to suspend a murder trial and, over objection, use some of the jury engaged in it in the trial of another case. Summers v. Commonwealth, 236 Ky. 499, 33 S. W. (2d) 594. The only difference between that case and this situation is that in the former the jury had been sworn and had not in this case, although, as stated, they had been accepted by both sides. As noted, the Code uses the word "accepted" in establishing the period or time after which the jury must be kept together. In Bowman v. Commonwealth, 146 Ky. 486, 143 S. W. 47, there was a separation of the jury after they had been accepted by the commonwealth but not by the defendant. The court held that in such a situation the error could not be treated as a cause for reversal. As was there indicated, it is the better practice in felony cases, and particularly those in which the death penalty may be inflicted, to keep the jurors together at all times after they have qualified for jury service, even though they have not been definitely accepted by both sides.

Moreover, the six men used on this trial were taken to the boarding house of a witness for the commonwealth who was hostile to the defendant. They were in charge of a deputy sheriff who had manifested his hostility to the defendant, and it had been agreed that he should not be placed in charge of the jury during the trial. In Napier v. Commonwealth, 110 S. W. 842, 33 Ky. Law

Rep. 635, it was declared improper to board a jury at the home of an attorney actively engaged in the prosecution, although at that time this court was without power to reverse the action of the trial court in overruling a motion for a new trial.

The Attorney General does not undertake to excuse the action of the trial court, but insists that the defendant waived the right to object, and that the terms of section 281 of the Criminal Code of Practice deny a right of review. The dates shown in this record indicate that the motion was seasonably made before the jury was sworn. We hardly see what other steps the defendant could have taken than those which he did take. The situation is different from that reported in many of our cases where timely objection was not made, of which Heck v. Commonwealth, 163 Ky. 518, 174 S. W. 19, is typical. This error did not relate to the choosing of the panel or the personnel of the jury. It was misconduct or dereliction on the part of the officers of the court and as such is reviewable. The error is sufficient itself to justify a reversal of the judgment.

3. At the same time the foregoing motion was made, another was filed asking the discharge of a certain named juror because of expressed bias, duly shown in affidavits. The facts alleged were not controverted. But the motion was overruled and, though an exception was reserved, the act of the court must be classed with those errors not reviewable under section 281 of the Criminal Code of Practice.

4. The record shows that the jury list drawn at the preceding term of court had been utilized at an intervening special term, and that on Sunday afternoon preceding the term at which the appellant was tried, the judge drew other names from the wheel case from which the jury trying the appellant was selected. Section 2247 of the Statutes mandatorily requires that the drawing of the jury list shall be done in open court, but this error is also to be classified among those coming within the purview of section 281, and hence cannot be held as a ground for reversal by this court.

5. Dan Lawson was brought from Jasper, Fla., to testify in the case and gave damaging evidence against the accused, to the effect that he had told him that he had committed this crime and that his brother and Bain were with him. The appellant was arrested at the instance of

Lawson in his home where he was visiting. He had been paid $100 and indicated an expectation of collecting the balance of a $500 reward offered for the apprehension and conviction of the appellant. Lawson testified to having received by special delvery mail on January 10th a letter bearing a postmark showing it was mailed in Jasper, Fla., at 4 o'clock on that day. He was permitted to introduce this letter and it was read to the jury over the objections of the defendant. The communication is as follows:

"Dan—

"I have just found out that you have crossed me up and had me arrested in your house. I am leaving in a few minutes with the Sheriff for Kentucky but I will come back and see you and I will see you before you see me. I am going to pay you off.
Bill."

"Remember that my buddies are still in Florida and watching you."

On cross-examination the witness stated that he had seen the defendant's handwriting, but said that he could not and would not state that it was in his handwriting, although it looked like it. He finally stated that in his opinion it was Fletcher's handwriting. This evidence fell far short of qualifying him to testify to the opinion. Anybody might have written the note. In the trial of Frasure v. Commonwealth, 169 Ky. 620, 185 S. W. 146, 151, a witness was permitted to testify to the contents of a destroyed letter signed only by the surname of the accused, which he had received in the mail. The statement of this court concerning its erroneous introduction is pertinent:

"Unless the contents of this supposed letter found its way to the jury through the protecting channels of the law for the introduction of testimony, it was highly prejudicial to permit the witness to testify concerning it. That this was not done is plainly manifest. All rules permitting the introduction of writings for the purpose of charging one with admissions therein made or for other purposes require that the genuineness of the writing must first be established, or there must be sufficient evidence of it to justify a jury in finding it to be so. It is not shown that the appellant wrote this letter, or that

his name was even signed to it; nor is there any evidence to justify the jury in finding that he wrote it more than a mere unauthorzed suspicion."

If upon another trial the letter in this case should be properly identified as having been written by the accused, it may be admitted, with the admonition that the jury will not regard the implied threats of retaliation contained therein, as the defendant will be tried only for the crime of murder as charged in the indictment.

In connection with the introduction of the anonymous letter, the defendant sought to introduce for comparison a letter which he claims to have written to another in March, 1930, and also asked permission to make a specimen of his handwrting in the presence of either the jury or the court in chambers. Both motions were overruled. Section 649 of the Statutes and section 604 of the Civil Code of Practice explicitly provide how proof of handwriting by comparison may be made and introduced. The rules of the statute were not complied with; hence the court did not err in rejecting the proffers. Reference is made to the annotations of the Statutes and Code for the constructions which have been put upon these statutes.

6. A witness, Tom Prewitt, was permitted to testify that two or three months before the murder, Robert Fletcher told him that there were some old people living near Barbourville who had lots of money and they could get it without anybody knowing it. He tried to get the witness to go with him to the place.

Emmett Taylor testified to the effect that Robert Fletcher told him on one occasion that he was hard up but if he could get enough money to tide him over for a few days he knew where he could get some money. If this statement proves anything it was not admissible against this accused.

Utterances of alleged coconspirators before the accomplishment of the common purpose which tend to establish a conspiracy between the defendant and themselves, or in furtherance of the common design then pending are admissible against the one being tried. But a predicate must be laid by evidence that there was a conspiracy then being formed or existing and a privity of design. Miller v. Commonwealth, 78 Ky. 15, 39 Am. Rep. 194; Morgan v. Commonwealth, 188 Ky. 458, 222

S. W. 940; Skillian v. Commonwealth, 206 Ky. 586, 268 S. W. 299. The existence of the conspiracy, however, may be shown after the admission of the evidence. Owens v. Commonwealth, 181 Ky. 378, 205 S. W. 398. Sometimes it is proper to instruct the jury that they should not regard the conduct or statements of the alleged coconspirators unless they believe from the evidence beyond a reasonable doubt that a conspiracy existed at the time. Crenshaw v. Commonwealth, 227 Ky. 223, 12 S. W. (2d) 336. It was done on this trial, but as suggested there was no evidence supporting the hypothesis.

The admission of the evidence of Prewitt and Taylor were manifest errors. Although the defendant was charged with committing the crime by conspiring with Robert Fletcher, there was no evidence tending in the remotest degree to show that there was any conspiracy existing between the accused and his brother at the time referred to by either witness.

7. Julia Metcalfe, who lived next door to Robert Fletcher in Corbin, testified that between 1 and 2 o'clock on Sunday morning following the homicide, she saw a man whom she took to be Robert Fletcher coming from the power house with a bucket. Two men employed there say that Robert Fletcher, who lived near by, about that time came over and got a bucket of water and that after he had gone they saw a light in Robert's house and some smoke issuing from the chimney. He had previously come for water late at night. A carnival was in town and a number of people were moving about.

The rule is well established that in the absence of the defendant, acts and declarations of a confederate of the defendant on trial after the accomplishment of the purpose of the alleged conspiracy, unless they be res gestæ, are not competent evidence. Thacker v. Commonwealth, 219 Ky. 789, 294 S. W. 491; Webster v. Commonwealth, 223 Ky. 369, 3 S. W. (2d) 754; Id., 223 Ky. 374, 3 S. W. (2d) 757. The evidence of the circumstance was improperly admitted against the defendant, for all the evidence indicates the crime for which he was being tried had been committed an hour or two before and several miles away.

8. Complaint is made that the court committed an error in refusing to entertain evidence of several witnesses impeaching Dan Lawson and Edith Lawson, who

had testified against him. These character witnesses lived in Knott county, and it was developed that they had known Dan Lawson for many years before and since his removal to Florida about twelve years before. Some of them, so the record discloses, would have testified that they knew his reputation in Florida at the time he was testifying and that it was bad. The rule as to the admissibility of this character of evidence demands that it shall be directed to the time of the trial and within a reasonable period before. When the attacked witness has a permanent and long-continued residence in a community, evidence of bad reputation elsewhere at a time long anterior to the present should not be admitted until there is some proof that his reputation is then bad. Mitchell v. Commonwealth, 78 Ky. 219. When the basis is laid, the evidence may relate back to a previous period if connected up with the current time. Wolf v. Commonwealth, 143 Ky. 273, 136 S. W. 193. On another trial of the case, if evidence is introduced to impeach the witnesses by those who are qualified to testify as to their reputation at the time they testified, and during the period of residence elsewhere, the court will permit the evidence relating to the time he lived in Knox County.

9. One of the grounds submitted in the motion for a new trial was that George Fuson had upon a number of occasions before this trial expressed his opinion that the defendant was guilty, and on one occasion that he ought to be hanged. It was further shown that he was a second cousin of the deceased, James Corum. The affidavit of the defendant and his counsel was filed showing that they had no knowledge of these facts until after the conclusion of the trial. There was a counter affidavit tending to show that the juror was not so closely related to the deceased, but the statements of seven witnesses showing his disqualification by reason of having expressed an opinion upon several different occasions were not controverted.

Action on a motion for a new trial is a matter resting in the sound discretion of the trial court, and this court has seldom considered the power to have been abused. Usually the evidence as to disqualification of a juror is contradictory. But here it is all one way and the vicious injustice stands admitted. The charges are like those which have been held sufficient to reverse a judgment overruling a motion for a new trial in Miller v. Common-

wealth, 203 Ky. 437, 262 S. W. 579, and Baker v. Commonwealth, 192 Ky. 478, 233 S. W. 1046.

10. The jury were instructed only on murder and without the qualification of self-defense. The instructions included the theories of actual commission of the crime by the defendant, by aiding and abetting the other two named in the indictment, and by having entered into a conspiracy with them to commit the offense. Some technical criticism is offered for the failure to use the term "malice aforethought" in direct relation to the defendant on trial. But the word "maliciously" was so used and defined. That would appear sufficient.

11. The court has many times held that when there is no eyewitness to a homicide and the evidence is purely circumstantial, especially where the surrounding conditions indicate that there was a struggle at the time of its commission, it is the duty of the trial court, out of due regard for human life and liberty, to instruct upon every phase or degree of the offense that might possibly be applicable in order that the jury may return a verdict under any state of fact it might infer from the circumstances to have existed. This includes an instruction on self-defense and manslaughter. Roberson's Criminal Law, sec. 1872; Brown v. Commonwealth, 117 Ky. 767, 78 S. W. 1126, 25 Ky. Law Rep. 1896; Rutherford v. Commonwealth, 13 Bush, 608. The subject is fully discussed in Frasure v. Commonwealth, 169 Ky. 620, 185 S. W. 146. However, in view of the testimony of Dan Lawson and his daughter relating admissions of guilt by the defendant, the evidence in the case was not altogether circumstantial, and we would not, therefore, hold the instructions prejudicially erroneous. We hardly see how a jury could return any verdict in this case but murder or acquitaal. But out of abundance of caution, upon another trial a full set of instructions should be given. It certainly can do no harm.

12. There is no merit in the contention of appellant that there was no evidence justifying a conspiracy instruction. The proof of the commonwealth tends to show that the accused and the two others with whom he is charged with conspiring were together at the time and place of the commission of the crime. There was ample evidence of a concerted action, from which the jury might very reasonably infer the fact of conspiracy. Gabbard v. Commonwealth, 159 Ky. 624, 167 S. W. 942; Crenshaw v. Commonwealth, supra.

This heinous crime—born in a malignant mind devoid of all conception of human compassion and at violent war with society, and executed with diabolical cruelty—demands the application of every resource and power of the commonwealth to bring to justice its vicious perpetrator. We, of course, give no expression of opinion as to the guilt or innocence of the accused; but it is manifest that the jury, by its failure to inflict the extreme penalty provided by law, entertained a remote doubt as to his guilt. Guilty or innocent, he was and is entitled under the fundamental law to a fair and impartial trial according to the law. The recitations in this opinion conclusively show that he did not have it.

The judgment is reversed.

Whole court sitting.