# Jackson et al. v. Commonwealth.

(Decided March 7, 1933.)

A. F. BYRD, ALEX H. ALLEN and EARL COOPER for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

The appeal is by Archie Jackson and Bob Saylor from a judgment sentencing them to prison for fifteen years for the killing of Taylor Bailey. The essential facts are that Bailey and some companions found a bee tree. While it was being cut, Bailey and two others found two barrels of moonshine still beer near by. As some of the party were tasting it, the defendant Archie Jackson, Dock Saylor, and two others came up. A pistol and gun battle ensued between Bailey and Dock Saylor. Perhaps others did some shooting also. There were no casualties. The parties separated in different directions. Later in the afternoon Bailey left the house of a friend on horseback and started towards his home.

After a short time, shooting was heard in the direction in which he went, and his body was found on the side of the creek bed road. During the interval following the battle at the beer barrels, the defendant Jackson, a brother-in-law, sent word to Bob Saylor, Dock's brother, that Bailey had killed Dock. Bob Saylor, with a shotgun, and Jackson with a pistol, went up the road in the direction in which Bailey soon afterward traveled and was found dead within less than an hour later. Ten or fifteen minutes after shooting was heard at that point, the two defendants came back together and reported Bailey as having been killed. He had been shot with both a pistol and gun. Lum Yates, a deputy sheriff, testified to finding the body below a tree which had fallen across the road. There were fresh footprints by the stump of the tree, and also a place in the high weeds indicating that somebody had been sitting there. He found other tracks around the place. Bailey's pistol was near his body with one loaded and five empty shells in it and with sand in the barrel.

The defendants testified that they were on friendly relations with Bailey. Bob Saylor stated that he received word in the afternoon through Henry Jackson that Bailey had killed his brother Dock. He got his gun and went with Henry Jackson to his home, where there were several other men whom he invited to go along. On the way, they found Archie Jackson on the side of the road, and he confirmed the report that Dock had been killed. Jackson had been there for some time waiting for some one to go with him. It is not clear what became of the rest of the party, but Saylor gave Jackson his pistol, and the two men went up the hollow where Dock was supposed to have been killed looking for his body. While on this search they heard a noise behind them and upon turning saw the deceased, Bailey, on his horse. He promptly told them, with an oath, that they had "just a half a minute to live." Saylor responded, "Taylor, you don't want to kill us," to which he answered with an oath "that he would show them," and immediately began firing. Both of the defendants then shot him to save their lives. The testimony of Archie Jackson as to the immediate occurrences is substantially the same. The reputation of the deceased for peace and order was bad.

The jury was taken to the scene of the homicide,

and Yates and Bob Saylor testified there by pointing out the positions and places they had referred to when testifying in the courtroom.

It is often that the commonwealth is not able to produce an eyewitness to a crime, and the story of the defendant goes uncontradicted by verbal testimony. But, where he admits the homicide and undertakes to justify it and there are circumstances tending to disprove the defendant's story, the case is one for the jury. In addition to the circumstances related, a very compelling motive for the defendants to kill Bailey was disclosed, that is, the belief then that he had that afternoon killed the brother of one and the brother-in-law of the other, while there was nothing tending to show a motive on Bailey's part to assault the defendants. We do not find any merit in the ground that the judgment should be reversed because the verdict is flagrantly against the evidence. Simmons v. Commonwealth, 207 Ky. 570, 269 S. W. 732; Fleming v. Commonwealth, 219 Ky. 697, 294 S. W. 153; Blankenship v. Commonwealth, 228 Ky. 830, 16 S. W. (2d) 478; Slavin v. Commonwealth, 229 Ky. 534, 17 S. W. (2d) 432; Barton v. Commonwealth, 238 Ky. 356, 38 S. W. (2d) 218; Beach v. Commonwealth, 240 Ky. 763, 43 S. W. (2d) 6; Blanton v. Commonwealth, 245 Ky. 546, 53 S. W. (2d) 952.

The record shows that, after twelve men had been interrogated as to their qualification as jurors, but not accepted by either party, court adjourned until the next day. On that morning the commonwealth's attorney filed a motion to have a jury chosen from another county, and in support of the motion filed an affidavit showing that a brother-in-law of the defendants had been riding over the county conversing with prospective jurors as to what they would do on the trial should they be selected. The court sustained the motion. When a venire from Lawrence county appeared, the defendants objected to the selection of a jury from it and challenged the panel. The objection being overruled, an exception was taken. The provisions of section 194 of the Criminal Code of Practice are now invoked to support the argument that it was error to get a jury from another county. The point might well be denied because the record discloses enough to support the discretionary action of the judge. But it seems sufficient to say that this was not made a ground in the motion

for a new trial, and that was indispensable to a consideration of the appeal.

Upon the ground that there was no evidence to justify it, it is argued that it was error to give an instruction called "the mutual rencounter" instruction. It is a well-known rule that, where there are no eyewitnesses to a killing except those charged with doing it and the evidence is circumstantial, the court should give instructions covering every reasonably deducible phase of the case. Commonwealth v. Saylor, 156 Ky. 249, 160 S. W. 1032 (in which it is shown that Mack Bailey killed Dennie Saylor in this county); Fletcher v. Commonwealth, 239 Ky. 506, 39 S. W. (2d) 972. But where the defendant testifies as to what occurs and undertakes to justify or excuse the homicide, he frequently obviates the necessity of giving instructions upon certain features, because the reason for the rule of possible applicability fails. Frasure v. Commonwealth, 169 Ky. 620, 185 S. W. 146; Howard v. Commonwealth, 231 Ky. 150, 21 S. W. (2d) 235. It is not, of course, necessary to say here whether under the circumstances it would have been error to omit giving the mutual combat instruction. We do say, however, that, considering the defendants' testimony and the conditions at the place of killing, it was not prejudicial error to give the instruction.

The newly discovered evidence relied upon as requiring a new trial, in substance, is that: Shortly before being killed, the deceased had a loaded pistol; the weeds which were mashed down at the scene of the homicide were mashed down by one Rice who had gone there with others after the killing but before Yates arrived; that Yates, who testified to seeing the tracks at the tree stump, was not at that point, while ten or fifteen men walked around the premises and probably made the tracks; that Yates picked up the deceased's pistol and it had five empty shells in it; that doctors who examined the body would testify as to the entrance and range of the bullets, which would support their version of the affray. This point must be denied, for the record does not show any abuse of discretion on the part of the trial judge in refusing to grant a new trial on this ground. He seems to have been justified in his ruling, for it was not made to sufficiently appear by statements of fact that the discovery of this evidence

could not have been made before the trial by reasonable diligence and because it was cumulative or impeaching in character, and not of such clear and convincing nature as to have been reasonably calculated to change the result of the trial. The authorities to this effect are many.

Nor can we find merit in the point of improper argument of the commonwealth's attorney. It is said that he went out of the record, but it seems to us that the evidence and reasonable deductions therefrom fully justified the argument.

Judgment affirmed.