## McDANIELS v. COMMONWEALTH.

Court of Appeals of Kentucky.
May 30, 1952.

Hiram H. Owens, Barbourville, for appellant.

J. D. Buckman, Jr., Atty. Gen., for appellee.

MOREMEN, Justice.

Appellant, McKinley McDaniels, was indicted for the murder of George Hammons. Upon trial he was found guilty of voluntary manslaughter and his punishment was fixed at 15 years in the penitentiary.

Appellant urges as grounds for reversal: (a) that the jury should have been directed to return a verdict of not guilty; (b) that the instructions were erroneous; (c) that the argument of counsel for the Commonwealth was improper and prejudicial.

Appellant and deceased owned and lived on adjoining land. They had had a controversy over the dividing line between the properties. A paling fence marked the boundary line part of the way and a branch completed it. On the day before the killing appellant had been cleaning up land at or near the disputed line. On the morning the trouble occurred appellant returned to this portion of his land with a young man named

Gray. Gray climbed a willow tree, presumably on appellant's land, for the purpose of cutting off a limb which reached over Hammons' land. George Hammons then appeared, thrust the barrel of a Winchester rifle through the paling fence and demanded that Gray stop his work or be shot out of the tree. Gray jumped from the tree and left the scene.

Appellant testified: "About that time, my wife came up and he said, 'I'm going to kill every God damn one of "you-uns."' She motioned for me to go behind her. I went behind her, and I left. Afterwards, I heard him say to her, 'If you come one step, I'll kill you.' That's the last words said between me and him." Appellant then testified that he walked about 100 steps to his house where he picked up his gun and walked back to protect his wife. He said that he met his wife about halfway between the house and the spot where the argument had occurred; that he didn't see George Hammons around and he told his wife that he was going back to get his tools and would get a warrant for Hammons. He stated that after he had taken about 10 steps, Hammons fired twice. He got behind a tree and the third shot cut the edge of the tree. He saw Hammons rise up and twist around as if he were reloading his gun. Appellant fired. The shot struck Hammons in the back near the right shoulder blade and emerged near the collarbone. Deceased walked a short distance before he fell and died. There is some evidence in the record that Mrs. McDaniels, when she remained near the scene of the argument, urged Hammons to settle in court rather than by violence. An eyewitness, Powell Carnes, was standing at the home and store building of McDaniels when the trouble occurred. He saw McDaniels and Gray going down towards the back end of the property, not far from Hammons' barn, with ax, saw and rope. In about 30 minutes he saw McDaniels come back to the house and arm himself. When McDaniels started back to the scene, he saw McDaniels' wife coming towards the house. Meanwhile he had seen Hammons apparently leave the fence and start towards his barn. Carnes stated that he requested McDaniels not to go back down there and also hollered to George Hammons and told him to run. Neither heeded his advice. McDaniels continued to walk towards the fence and Hammons came back either to the fence, or to a stack of palings, and soon fired the first three shots. He saw Hammons when he rose up.

It may be gathered from the foregoing that appellant attempts to justify his return to the scene of the original argument—when he knew, or should have known that Hammons was still in the vicinity—because (a) he believed his wife was in danger; and (b) after he discovered she was not, he decided to get the various implements he had abandoned. We cannot place too much credence in appellant's contention that he returned to the house in order to obtain a gun to protect his wife or that either his wife or he was in danger after the original incident was over. He testified on cross-examination.

"Q. 8 Did you go get your gun after that? A. After which?

"Q. 9 After you heard him say that to your wife, that he was going to kill her. A. Yes sir.

"Q. 10 Why didn't you take your wife with you? (Witness hesitates.) A. I don't guess—

"Q. 11 Why didn't you take your wife with you? A. I take care of myself.

"Q. 12 Why, didn't you tell the jury you went to take care of your wife? Which was it? A. I start with myself, then my wife.

"Q. 13 You take care of yourself and then your wife. Then, if you were not taking care of your wife, he had his gun there and he had his gun on her, why didn't you tell your wife to go to the house? (No answer.)

"Q. 14 Don't you want to answer that? A. She's got to help her own self. She takes care of herself.

"Q. 15 She didn't need any help, is that what you thought when you left there? A. Not at that time.

"Q. 16 You didn't think she needed any at that time. When did you decide

she needed some? Before you got your gun or after? A. After."

After the original disturbance, appellant left the danger spot and returned to his house. There was no pursuit, and he had reached a place of safety. He suggests in one part of his testimony that he left his house to protect his wife, but the above admissions made on cross-examination disprove this. He then says after he talked to his wife and did not see Hammons about, he started to get the implements which he had left under the tree. But it is not required that the court accept his excuse as absolute justification for his action. Whether to believe him or not was a question for the jury. In the case of Jackson v. Commonwealth, 248 Ky. 47, 58 S.W.2d 263, 264, we said:

"It is often that the commonwealth is not able to produce an eyewitness to a crime, and the story of the defendant goes uncontradicted by verbal testimony. But, where he admits the homicide and undertakes to justify it and there are circumstances tending to disprove the defendant's story, the case is one for the jury."

In the case at bar the jury might well believe, as they apparently did, that appellant returned to the house in hot anger, obtained a gun and returned to the spot with the purpose to precipitate a mortal combat.

It is generally the rule that a question of self-defense is one for the jury. In Ayers v. Commonwealth, 195 Ky. 343, 242 S.W. 624, 625, we quoted with approval this language from an earlier case:

"'* * * but the modern rule in Kentucky is that whether he should stand his ground or give back is a question for the jury to determine under an instruction declaring apparent necessity a legal excuse for the homicide and the measure and only test of his right to slay his assailant.'"

We believe the court properly overruled appellant's motion for a directed verdict of not guilty.

Appellant next insists that the court erred in giving instruction No. 4 to the jury, which reads as follows:

"Although the jury may believe that the defendant, McKinley McDaniels, shot and killed the deceased, George Hammons, either as set out and defined in Instruction No. 1 above, or as set out and defined in Instruction No. 2 above, yet if the jury shall believe from the evidence that at the time he did so, he believed and had reasonable grounds to believe that either he or his wife were then and there in danger of death or the infliction of some great bodily harm at the hands of George Hammons, and that it was necessary, or appeared to him, in the exercise of a reasonable judgment, to be necessary, for him to shoot, wound and kill the deceased, George Hammons, in order to avert that danger, real, or to him reasonably apparent, then the jury should find the defendant not guilty, upon the ground of self-defense, or defense of his wife, or apparent necessity therefor.

"However, this instruction is subject to the following qualifications: If the jury shall believe from the evidence, beyond a reasonable doubt that the defendant, McKinley McDaniels, brought on the difficulty in which the said George Hammons was shot, wounded and killed by leaving the premises mentioned in the evidence, and later returned to the premises with his rifle, when it was not necessary, and when the defendant had no reasonable grounds to believe it necessary to protect himself or his wife from immediate danger of the infliction on him or her of death or great bodily harm, or which reasonably appeared to him about to be inflicted on him or his wife by the said Hammons, and that the defendant thereby brought on such danger to himself, if they believe from the evidence that any such danger existed, then, in that event, the jury cannot acquit the defendant upon the ground of self-defense, or apparent necessity therefor."

He insists that the second literary paragraph of that instruction was erroneous and should not have been given because the evidence showed that Hammons was the aggressor who fired the first three shots. It is true that Hammons was the aggressor during the original incident, but the question to be determined by the jury here was whether or not appellant shot in self-defense during the second engagement. It may be that decedent himself shot in self-defense when he saw appellant go to the house, arm himself, and return. It was proper for the court to submit the question of whether McDaniels brought on the difficulty when the manner by which the difficulty was precipitated is described. In Harvey v. Commonwealth, 266 Ky. 789, 100 S.W.2d 829, we said:

"Instruction No. 6 stated in effect that appellant could not rely on the right of self-defense or defense of his associates named in the instruction if after having trouble with deceased, he and his associates left and later returned to the scene of the original difficulty and 'commenced' a second difficulty with deceased at a time when they were determined to and did engage in a conflict with him by mutual consent. Where in a homicide case there is evidence tending to show that the accused and deceased mutually and voluntarily engaged in a combat with the intention on the part of each to kill or to do great bodily harm to the other, or that accused sought or brought on the difficulty, it is proper to modify a self-defense instruction. See Hobson, etc., on Instructions to Juries, sections 765 and 766 and cases thereunder cited, a number of which hold that such modified instructions are erroneous which contain expressions 'brought on the difficulty,' 'began the affray,' etc., without describing the manner or means by which the difficulty was 'brought on,' etc., or the 'affray begun.'"

We emphasize: The use of such phrases as "brought on the difficulty" without describing accurately the means by which the difficulty was incited, results in an erroneous instruction. Reference is made to the discussion in Mays v. Commonwealth, 200 Ky. 678, 255 S.W. 257. But here we are not presented with that situation because the court clearly stated the manner by which appellant might have brought on the second engagement.

We must remember that in the first literary paragraph of instruction No. 4, appellant was given the benefit of a proper self-defense instruction. It is the qualification of that instruction with which we are concerned, and the gravamen of that charge is: Did appellant willingly return to combat at a time when he had no reasonable grounds to believe it was necessary for the protection of himself or his wife?

We think that this instruction fairly stated the law. The law of self-defense is a law of necessity. In the absence of a need to defend, the principle should not be applied. After appellant reached a place of safety, when there was no need to return, and he, thereupon, armed himself and returned, he should not be given the advantage of an unqualified self-defense instruction. With a qualified instruction which described the circumstances, the jury was able to decide whether appellant's return was stimulated by necessity or fury.

Toncray v. Commonwealth, 291 Ky. 471, 165 S.W.2d 8, 10, is a case that involved the question of return to the scene of a previous altercation. The instruction on self-defense was qualified by another which in substance advised the jury that if they believed beyond a reasonable doubt that the defendant, at a time when he was in no danger of death or great bodily harm at the hands of deceased, had armed himself with a pistol and sought out the deceased for the purpose of bringing on or engaging in a difficulty, then in that event defendant could not justify himself on the ground of self-defense. In that case, too, the appellant testified, and other witnesses corroborated, that after his return the victim was the aggressor. Appellant stated that he was on a peaceful mission. The court approved the qualification of the instruction with the

exception of one objectional phrase, not supported by any evidence. The court said:

"Still, there is the fact that after having gone home the defendant went to his store, obtained his pistol and returned to the scene of the first trouble, sought out the deceased and precipitated the argument as to his right to use the school grounds. The jury might well have believed that the announcement of a peaceful mission was a pretext to conceal an evil purpose."

On the second appeal of the case, Toncray v. Commonwealth, 296 Ky. 400, 177 S.W.2d 376, the instruction, given without the objectionable phrase, was again approved.

We are of opinion that instruction No. 4 clearly defined the law under the facts shown in this case.

■ Counsel insists that the self-defense instruction should have been qualified by one that embraced this idea:

"In the event the jury believes from the evidence that appellant, in good faith, believed and had reasonable grounds to believe that the deceased Hammons had abandoned the difficulty, after meeting his wife, proceeded with such good faith belief in his mind, for the purpose of retrieving his tools and then the deceased Hammons returned to the scene and began firing at the defendant, the defendant had the right to defend himself and use such means at his command so to do, even to this the taking of the life of the deceased and in that event the jury should acquit the defendant."

There was no intimation in the record that the tools were in danger of being stolen or that appellant was acting in defense of his property, and such an instruction omits entirely the essence of the requirement that the plea of self-defense is forfeited by aggression of the accused; presents the converse of the question of whether appellant abandoned the scene and brought on the difficulty by returning; ignores the question of whether McDaniels fired under the apparent necessity of averting harm to himself or his wife; turns the decision of the jury solely upon the "good faith belief" in appellant's mind, and is, we believe, improper.

■ Appellant complains finally because the Commonwealth's attorney was permitted, over objection, to relate to the jury during argument, that once he had prosecuted a man for killing another, and one juror had hung the jury and on the next day his boy was killed, and the juror cried every time he sees him and tells him that if he had done his duty, his boy would not have been killed. This inanity could not have had a prejudicial effect upon a jury engaged in trying a serious charge.

We are of opinion that appellant received a fair trial and the judgment is, therefore, affirmed.