**Rex KILBURN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 22, 1965.

Maxwell P. Barret, Richard C. Ward, Reeves, Barret & Cooper, Hazard, for appellant.

Robert Matthews, Atty. Gen., John B. Browning, Asst. Atty. Gen., for appellee.

MOREMEN, Chief Justice.

Appellant, Rex Kilburn, was indicted for murder and convicted of manslaughter. His punishment was fixed at imprisonment for twenty-one years. He contends that the trial court erred (1) in refusing to sustain a motion to direct a verdict of acquittal for him, and (2) in giving an instruction which improperly qualified and limited the law concerning his right of self-defense.

Appellant's whole defense was based upon the contention that he shot and killed Pearl Begley in the protection of himself and his foster son, Charles Caudill, and his own son who was about seven years of age.

The evidence introduced in behalf of the commonwealth disclosed that about 9:30 p. m. on July 4, 1964, Begley drove his car onto the premises of a gasoline station and restaurant operated by Delbert Baker. Begley told Baker that Rex Kilburn's boy (Charles Caudill) had thrown a pop bottle into his car, had hit him on the arm and had hurt him. He said he had shot at him and wished he had hit him right in the back of the head. An automatic pistol was on the seat beside Begley at the time. Begley then drove away. Appellant Kilburn was present and overheard Begley's statement. Within a short time Caudill came to the

service station, bought a soft drink and was consuming it outside the building not far from the gasoline pumps when Begley returned. He accused Caudill of hitting him with the bottle and they became involved in an angry argument. Begley was holding in his hand a gun which he raised and lowered from the sight of some of the spectators. He told Caudill that he would get even with him and Caudill replied that if Begley would let someone hold his gun he would go with him wherever he wanted to go, at which time several of the witnesses ran for cover. The door of the car was opened and appellant came toward the car crying "drop it" and then fired five shots into Begley's body.

The principal witness for the commonwealth, Delbert Baker, remained during the entire engagement and we will quote his testimony on this vital point:

"He said, 'You are the dirty son-of-a bitch that throwed the pop bottle through my car,' and the boy used the same words back and told him that he was the one that told him to get off the road, and Pearl said, 'I would shoot a man's brains out' or 'blow a man's brains out that would throw a pop bottle through my car,' and Pearl was real mad and Charles said, 'You lay that gun down or leave it here with some of these fellows or Baker, and I will get in my car and go anywhere you want to and we will settle this,' and Pearl came out with the same words again and said, 'If you fool with me, we will settle it right here.' Charles then gave him the same names back and told him to get out. The car door flew open and then Rex Kilburn jumped in behind the door, he threw the door open between me and Rex."

"Q. Did Rex come from behind the car? A. Near the back of the car, the first I seen him, I was trying to get some stock in, and when I noticed Rex first, I suppose he had come from there because the view was blocked on this side, and the first time I saw him

he was up near the door of the car and hollering two words, 'drop it, drop it,' and then the gun was fired."

Another witness, Raymond Combs, testified:

"They called one another bad names, we was standing there talking to Rex when the door opened. I started walking toward the restaurant and when I got almost to the door I looked back and Rex went around the front end of the car and he told Pearl not to do that, twice, and before I went into the door I heard him ask Pearl to drop the pistol twice.

"Q. What were his exact words? A. He said 'don't do that' the first time, and then I heard him say, 'drop it, drop it!'

"Q. How soon after that was it that he shot? A. I don't know, I was in the door and I never looked around to see who done the shooting."

Another witness for the commonwealth, Roy Turner, testified that he ran off when Begley "jerked the gun up in the window and laid it back down." Another witness, Fred Sizemore, added nothing to the other testimony—in fact, he left the scene when the trouble first began. These were all the witnesses introduced by the commonwealth with the exception of the coroner and a state policeman, neither of whom was present at the time of the homicide.

We do not have under consideration at this point testimony introduced in behalf of the defendant. However, we state parenthetically that nothing in that evidence materially alters the description of the occurrence as related by the witnesses for the commonwealth; in fact, it emphasizes that Kilburn had acted in self-defense and that Begley was the aggressor during the entire time.

The facts in this case have many similarities to those presented in Adkins v. Commonwealth, 293 Ky. 329, 168 S.W.2d 1008,

where one man killed in defense of another who had been viciously attacked by a third party. There, as here, the case was unusual in that there was no contradiction as to the substantial and essential facts. The Court said:

"The right to take a human life in one's self-defense, or apparently necessary self-defense, extends to acting in defense of another under the same circumstances; so facts which will excuse a killing in defense of self likewise will excuse a killing in defense of another, for it is a general rule that whatever a person may lawfully do for himself he may lawfully do for another. The undisputed facts in this case show not only an apparent but real danger of Cooper suffering death or great bodily harm at the hands of Ward and that he had done nothing to provoke the vicious and unwarranted assault. It is seldom that a verdict of acquittal in a homicide case should be directed, especially where the defendant admits the killing or it is clearly proved that he did so because of the necessity of a defendant, as a practical matter, establishing a legal excuse or justification, although theoretically the burden of proving that the homicide was without such excuse or justification remains to the end on the prosecution. In this case all the witnesses for the Commonwealth sustained the contentions of the defendant and witnesses introduced in his behalf that the homicide was excusable. Under either view as to the burden, we are of opinion that the court should have peremptorily instructed the jury to find the defendant not guilty. Privitt v. Commonwealth, 271 Ky. 665, 113 S.W.2d 49."

A full discussion of situations involving a plea of self-defense and when the court should direct a verdict in behalf of the defendant may be found in Taul v. Commonwealth, Ky., 249 S.W.2d 45.

■ We are of opinion that the evidence introduced by the commonwealth sustains appellant's contention that the homicide was excusable and that the judgment should be set aside and appellant granted a new trial. If, upon that trial, the evidence of guilt is no stronger than that adduced in the present one, the court should direct a verdict of not guilty.

■ We think the court also erred in giving the instruction which reads, "But if you believe from the evidence beyond a reasonable doubt, that the defendant, Rex Kilburn, or the said Charles Caudill, first began the difficulty by shooting Pearl Begley or making a demonstration to shoot him at a time when neither of them was in any danger, real or apparent, at the hands of Pearl Begley, then you should not excuse the defendant on the ground of self-defense or apparent necessity therefor, or the defense of another or apparent necessity therefor as defined in instructions No.—and V," because it was not justified by any of the facts produced at the trial.

Judgment reversed.