**578**

Ray Truman MAYFIELD, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 31, 1972.

C. B. Upton, Williamsburg, for appellant.

John B. Breckinridge, Atty. Gen., Douglas E. Johnson, Asst. Atty. Gen., Frankfort, for appellee.

MILLIKEN, Judge.

Ray Truman Mayfield was convicted of the killing of Shirley Ray Smith and sentenced to serve twenty-one years in the penitentiary. He had pled self-defense and was the only witness who knew what happened, no one else having been present. We reverse.

Mayfield had been an automobile salesman at various places in Southeastern Kentucky, but for about a month had been employed in that capacity in Norwood, Ohio. On Saturday midafternoon, May 30, 1970, Mayfield stopped in a Norwood bar where he met Smith whom he had not known before. During their conversation, Smith discovered that Mayfield sold Chevrolets and Mayfield learned that Smith was professedly a potential car buyer. As a result of this meeting of the minds, Mayfield permitted Smith to drive his new Chevrolet and they drove to Smith's father's in Oakley, a short distance from Norwood, where Smith procured ten .38-caliber cartridges, according to Mayfield, and asked him to count them. Mayfield testified that Smith said he wanted to deliver them to a friend, but there is no account of their delivery. Mayfield said Smith wished to try out the car on the expressway, but that he (Mayfield) expressed reluctance at such a venture on the grounds that he felt uncomfortable gastronomically, whereupon Smith volunteered to stop at another saloon to procure a stabilizer for Mayfield's digestion, and brought out what appeared to be a glass of tomato juice which Mayfield drank. Mayfield woke up on Stinking Creek Road in Knox County, Kentucky, about six hours later, and Smith had reached his home neighborhood where he stopped twice to make short visits with friends, carefully taking the car keys with him.

Upon the resumption of their travel, trouble broke out between the travelers and only Mayfield was left to tell what happened. He testified that Smith requested a stake for a poker game and, when Mayfield said he did not have that kind of money, Smith called him a liar, got out of the car, stood at the door and ordered Mayfield out at the point of a .38-caliber pistol, threatening to kill him.

Mayfield had over $200 in his purse and Smith knew he had a substantial sum. Mayfield testified that he obediently slid across the carseat, pushed away the barrel of the pointed pistol and Smith fell in the road where he was found a half-hour later, dead, with a beer can between his knees. Mayfield sped off in his car and wrecked it on a curve about a mile away, leaving his empty purse, Ohio driver's license and some clothes in the battered automobile. He paid two men to take him to a hospital in Corbin, bought them a six-pack of beer, and did not mention Smith. He said he tried to drink some of the beer, but stopped because it did not taste good. Smith died of a .38-caliber bullet in the head, but the weapon which fired it was never found. A .22-caliber pistol, which had not been fired recently, was found tucked in Smith's belt. Mayfield claimed he did not know Smith had been shot, that his own hand at no time touched the trigger and that all he wanted to do was to get away from Smith; he said he never saw the .22 before, but certainly saw the .38 both at the time it was pointed at him and before that when Smith shot it through the open window of the car.

■ The appellant contends that his un-contradicted testimony entitled him to a directed verdict of acquittal, but we think the sequence of events—the fleeing from the site of the shooting, the wreck, and his subsequent silence about Smith, justi-fied the jury in questioning the truthful-ness of his testimony. There was enough for the jury to infer his guilt; it did not have to believe Mayfield. Taul v. Com-monwealth, Ky., 249 S.W.2d 45 at 47 (1952). In other words, we can not find that it conclusively appears that the act of killing was in self-defense.

In summarizing Mayfield's testimony, which is the only testimony in the record about the killing itself, the propriety of Instruction # 3 on self-defense is thrown into question. Included in that instruc-tion was this qualification:

" * * * However, if the jury shall believe from the evidence beyond a reasonable doubt that the defendant, Ray Truman Mayfield, brought on the diffi-culty in which the said Shirley Ray Smith was shot and killed with a pistol when it was not necessary and when the defendant had no reasonable grounds to believe it necessary to protect himself from immediate danger of the infliction on him of death or great bodily harm or which reasonably appeared to him about to be inflicted on him by the said Shirley Ray Smith, and that the defendant there-by brought on such danger to himself, if you believe from the evidence that any such danger existed, then in that event the jury cannot acquit the defendant on the ground of self-defense."

■ The appellant contends that there is no testimony on which to base this qualification—that there is nothing to in-dicate that Mayfield " * * * brought on the difficulty in which said Shirley Ray Smith was shot and killed with a pistol * * *", and that, in any event, the words "brought on" are too general and erroneous unless the instruction also de-scribes accurately how the accused caused the difficulty, citing McDaniels v. Com-monwealth, Ky., 249 S.W.2d 546 at 549 (1952) and Lawson v. Commonwealth, 309 Ky. 458, 218 S.W.2d 41 (1949). We find the qualification of the self-defense instruction was not based on any evidence to justify it—there was nothing to indicate that Mayfield was the aggressor and, for that reason the instruction was erroneous. Kilburn v. Commonwealth, Ky., 394 S.W. 2d 948 (1965).

We do not find it necessary to pass on other alleged errors. The judgment is reversed and the case remanded for a new trial.

All concur.