## Lee v. Commonwealth.

(Decided October 1, 1913).

### Appeal from Graves Circuit Court.   ' ·        '

1.   Bill of Exceptions—Filing of—Signature of Judge to.—Where the
bill of exceptions, including the evidence heard on the trial, is filed

in proper time in the circuit court, approved and signed by the judge thereof and made a part of the record, it is not necessary that such judge should again attach his official signature to the bill of exceptions after it is included in a duly certified typewritten transcript of the record made by the circuit clerk for the Court of Appeals.

2. Criminal Law—Confession—Evidence—Instructions.—Where confession of a defendant's guilt of a crime charged, made by him out of court, is accompanied with other proof that such a crime has been committed; that is, with proof of the corpus delicti, it will warrant a conviction, although the corroborative testimony should not tend to connect the defendant with the commission of the crime. Where it is doubtful whether, in fact, a crime has been committed, the jury should be instructed that an alleged confession will not warrant a conviction unless accompanied with other proof that such a crime has been committed. But where, independent of the confession of the defendant, there is evidence proving the corpus delicti beyond a reasonable doubt, it is unnecessary to give such an instruction.

B. C. SEAY for appellant.

JAMES GARNETT, Attorney General, OVERTON S. HOGAN, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Ernest Lee, together with Ruley Sanderson and John Sullivan, was indicted in the Graves Circuit Court for the crime of breaking into a storehouse or warehouse, of which Sam Willett was the owner, with the felonious intent to steal and carry away therefrom property of value. Appellant was given a separate trial which resulted in his conviction, and he has appealed from the judgment entered upon the verdict finding him guilty.

The Commonwealth has entered a motion to strike from the record the bill of exceptions. The motion is based upon the ground that, as the name of the presiding judge appearing to the bill of exceptions is not in his own handwriting, but was typewritten, the bill cannot be regarded as having been signed, approved and made a part of the record.

No reason is perceived for sustaining this contention. Counsel seem to have overlooked the fact that the bill of exceptions, including the evidence heard on the trial in the court below, is not the original bill prepared by defendant's counsel and the official stenographer of the court, but a copy thereof made out and cer-

tified by the clerk of the court. While it is true, that the bill of exceptions, including the evidence, must be signed and approved by the trial judge and made a part of the record, we know of no provision of the Code or rule of practice that requires the judge, after the copying of the bill of exceptions by the clerk in making out the transcript of the record for this court, to sign his name at the foot or end of the bill of exceptions. We assume it to be true that the judge, when the bill of exceptions, including the evidence, was presented to him for his approval and signature, then approved and signed it, for the record so shows, and the clerk, in making out the transcript of the record for the appeal, used for that purpose a type machine and made a type-written copy of the judge's signature to the bill of exceptions as in copying all other parts of the record. In other words, the name of the judge appearing in the record is not the original official signature, but a copy thereof as made by the clerk in preparing the record for the Court of Appeals. So, for the reasons indicated, the motion of the Commonwealth to strike the bill of exceptions from the record is overruled.

Three grounds are urged by the appellant for a reversal of the judgment of conviction: First, the absence of evidence conducing to establish his guilt; second, error in the admission of evidence; and third, failure of the trial court to instruct the jury as to all the law of the case.

As to the first ground, it may be remarked that the evidence introduced in behalf of the Commonwealth conduced to prove that tobacco was stolen from the barn of Willett, the prosecuting witness, and that whoever committed the theft did it at night, by unfastening the chain or latch of a door or window of the barn and by that means entering the building; there being no other way to enter the building without opening a door or window, all of which were secured by chains and latches. All the doors and windows of the barn were securely fastened by Willett about the close of the day preceding the taking of the tobacco, and when he went to the barn early the following morning they were still fastened as he had left them the night before, but, upon entering the barn, he discovered the loss of the tobacco, which had been taken from a bulk he had made of it, while in case, previous to the larceny.

Upon discovering that a part of the tobacco was missing, he found the tracks of two persons and, upon following them, saw that they led to the barn of one Sullivan, the father-in-law of appellant, with whom the latter was then living; that there was no tobacco in the barn of Sullivan, and that, leading from Sullivan's barn in the direction of Paducah, were fresh tracks made by a wagon which appeared to have been loaded with tobacco. The foot tracks referred to, from Willett's barn to that of Sullivan, as well as the wagon tracks going from Sullivan's barn, were also seen and followed by the witnesses, Lamb and Babb.

On the day following the taking of the tobacco from Willett's barn, Lee and Sanderson were shown to have hauled a wagon load of tobacco to Paducah and there sold it to one of the warehouse companies of that city, the check for same being payable to and received by appellant. This tobacco was seen by Willett on the day of its sale in Paducah and all or much of it identified as his tobacco. Another witness, Van Ness, testified that he also saw and followed the tracks that led to the barn of Sullivan and that he also went to Paducah the day appellant and Sanderson sold the tobacco to the warehousemen, and there saw the tobacco on the wagon of Sullivan which looked like the tobacco Willett owned and had stored in his barn, and that appellant got the money for the tobacco that he, the witness, saw on Sullivan's wagon.

In addition to the above testimony, Jeff Shanks and O. C. Turner testified that appellant, shortly after the taking of Willett's tobacco, confessed to them his guilt of the crime; saying to Shanks that he and another party got the tobacco and that there was one innocent party; and to Turner, that he and Sanderson had taken the tobacco from Willett's barn, but that his father-in-law, Sullivan, had nothing to do with it, and that he did not want Sullivan to get into it on his account. Appellant also said to Turner that he was going to confess his guilt or tell what he knew about it, and then leave the State; and shortly thereafter he did leave the State and go to the State of Arkansas, where he remained for several weeks before he returned to Kentucky and submitted himself to arrest.

Appellant testified in his own behalf that he did not enter the barn of Willett or take therefrom his tobacco, but while admitting that he hauled on his father-in-law's wagon to Paducah and there sold tobacco to a warehouseman, he claimed that the tobacco belonged to his father-in-law, Sullivan, and the latter's son. He admitted having conversations with Shanks, but he denied that he had made a confession of his guilt, and also denied that he had either talked with or admitted his guilt to Turner. It does not appear whether Sanderson or Sullivan attended the trial, but it does appear that neither of them testified; nor was there any evidence introduced in appellant's behalf except that furnished by his own testimony.

It will thus be seen from what has been said of the evidence that it established the following facts: That Willett's barn was forcibly entered and a part of his tobacco taken therefrom; that the tracks found leading from the barn to Sullivan's showed that whoever took the tobacco carried it to Sullivan's; and the wagon tracks, as well as the admission of the appellant, show that the tobacco was carried from Sullivan's to Paducah where, practically all of the evidence shows, it was sold for money that was received by appellant; and that the tobacco, which appellant and Sanderson hauled from Sullivan's to Paducah and there sold, was identified by Willett and Van Ness as the tobacco of Willett; and finally appellant offered no evidence to corroborate his testimony that Sullivan and his son owned or had any tobacco at Sullivan's or elsewhere,. at the time Willett's tobacco was stolen.

In view of the facts and circumstances referred to, it cannot be claimed, with any show of reason, that there was no evidence tending to establish appellant's guilt. Therefore, the case was properly allowed to go to the jury that they might determine the question of his guilt or innocence.

With respect to the second ground of reversal urged by appellant, it is sufficient to say that we are unable to find any prejudicial error in the admission of evidence. It is complained by appellant that the alleged incompetent evidence is found in the testimony of Lett Babb. The court should not have permitted Babb to testify as to the conduct and certain statements of the sheriff of McCracken County just before the tobacco, taken to Paducah by appellant, was being unloaded from

the wagon at the place of sale, but, as what he testified to was a mere request made by the sheriff that some one should go with him in his buggy that he might stop the unloading of the tobacco and that he did, upon reaching the tobacco, stop the unloading of it, it cannot be said that the testimony in question was sufficiently material to affect the verdict one way or the other, and it could not have been prejudicial to appellant.

Appellant's third contention seems to be the one most strongly relied upon by him. There were but two instructions given by the court, and it is not claimed that either of these was improper. But, it is urged that the court should have given a third instruction telling the jury that the confession of guilt made by appellant to Shanks and Turner, if any there was, did not warrant his conviction in the absence of other proof that the crime was committed. This contention is based upon section 240, Criminal Code, which provides:

"A confession of the defendant, unless made in open court, will not warrant a conviction unless accompanied with other proof that such an offense was committed."

In Roberson's Criminal Procedure, Vol. 2, Sec. 963, it is said:

"* * * Where a confession made out of court is accompanied with other proof that such an offense has been committed, that is, with proof of the corpus delicti, it will warrant a conviction. It is not necessary that the corroborative testimony should tend to connect the accused with the commission of the offense. * * * Where it is doubtful whether, in fact, a crime has been committed, the jury should be told that an alleged confession will not warrant a conviction unless accompanied with other proof that such a crime has been committed. But when, independent of the confessions or admissions of the defendant there is evidence proving the corpus delicti beyond a reasonable doubt, it is unnecessary to give an instruction concerning the weight to be given confessions." Patterson v. Commonwealth, 86 Ky., 313; Wigginton v. Commonwealth, 92 Ky., 282; Dugan v. Commonwealth, 102 Ky., 241; Green v. Commonwealth, 26 Rep., 1221.

In this case, the corpus delicti (i. e., the fact of the felonious breaking into a storehouse or warehouse for the purpose of stealing therefrom property of value) was sufficiently proved, independent of the confession of guilt made by the appellant to Shanks and Turner;

and it may further be said that the facts and circumstances attending and following the commission of the crime, strongly conduce to prove that appellant was the person who committed it. Therefore, it was unnecessary to give the additional instruction asked by him.

A careful consideration of the record convinces us that appellant was given a fair trial in the court below, and this being true, no reason is apparent for disturbing the verdict. Wherefore, the judgment is affirmed.