## Blankenship v. Commonwealth.

(Decided April 16, 1929.)

STATON & KEESEE and W. W. BARRETT for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

On the morning of the 27th of May, 1928, the body of Joe Jarrell was found floating in Tug river about one-half mile below the Majestic Coal Mining Camp, and about one-fourth mile from a railroad crossing. His automobile was found off the highway about 15 feet, where it had lodged against a large rock, a log, and some small trees. The front of the car was towards the river. The automobile was about 10 or 12 feet from the river, and between it and the river was a large flat rock. The left front door of the automobile was open, considerable blood was on the floor of the automobile in front, and evidence of a small spot of blood was on the windshield. The blood was smeared over the floor, indicating that something had been dragged through it. Three men discovered the body floating in the river. A watch was found on it, indicating that it had gone into the river at 4:25. The coroner held an inquest, and within a few days thereafter the appellant was arrested, charged with the crime. He was indicted, tried, and his punishment fixed by the jury at life imprisonment.

The automobile was damaged little, if any. An examination of the body of Jarrell showed that it had been struck with some blunt instrument over the eye, causing a serious contusion. He had been struck on the left side of the head with some instrument which cut his ear in two and left the top half of his ear dangling. He had also been struck in the back of the head, crushing or fracturing the skull.

The appellant was an employee of the Majestic Coal Mining Company, and he was also a deputy sheriff. It appears that it was his duty to keep order in the coal camp. He had been married twice, but at the time had been divorced from each of his wives. He had been intimate with the wife of Jarrell, and had been paying her attention for some time. He was violently in love with her and her husband was violently jealous. She and her

husband had some difficulty, and about a week before his death he had forced her to leave home. The appellant took her in his automobile, and carried her to the home of Mr. and Mrs. Wolford, where she appears to have concealed herself from her husband. He searched for her about the neighborhood, and on two occasions went to the home of Wolford, but she hid herself, and he did not find her. The appellant went to the home of Wolford at least on two occasions while she was there, but he was warned to stay away by the man of the house. On one of his visits he took her "a pretty little dress with gold buckles on it" which he had purchased for her. On his other visit he took her a pair of slippers and a pair of hose. He had told at least one witness that he was going to leave and go to Canada, and that he expected to take a woman with him. He had talked to others about Mrs. Jarrell, professing his great love for her. Letters had passed between them. They had met clandestinely about the mining camp.

On the night that Jarrell was killed, a young man went to the house of Wolford for the purpose of escorting Mrs. Jarrell to the home of her uncle. There was to be a dance at the schoolhouse in the camp that night, which was on Saturday. The dance was conducted, and the people of the community assembled. There was much dancing and much driving about in automobiles.

Before detailing the acts of the appellant on the night that Jarrell was killed, it is proper to mention that several witnesses testified that he had stated that he was going to kill Jarrell, while others said that he made statements to them that, if he remained in the camp, he would have to kill Jarrell. He was the owner of a Nash automobile which had been painted a blue color, which color was distinctive, as it had been hand painted. Jarrell was the owner of an automobile, but he had lost a license plate, and he had a cardbord with the number on it attached to the front of his machine.

Appellant and Jarrell were both at the dance. A while before midnight Jarrell drove his mother and children about the camp in his automobile, and they testified that in driving through and around the camp on about 12 different occasions that night the appellant followed them in his machine. About 3:30 in the morning while the dance was still going on, appellant and Jarrell were seen standing in front of the schoolhouse talking.

It began to rain, and appellant suggested that they get in out of the rain, whereupon they entered the automobile of Jarrell and sat there for some time. About 4 o'clock in the morning witnesses saw appellant's car and Jarrell's car down near the river about the mouth of Poplar creek, and about one-half mile above the place where the body of Jarrell was found. The cars were facing each other, and both stopped, one with the engine running. The cars were identified by more than one witness. Another witness who saw the cars standing there also saw one man leave one of them and get into the other. About 4:30 in the morning a young lady and a young gentleman, in passing, saw some one driving the car of appellant. Two gentlemen driving about the same time saw the car of appellant come from the direction of the place where the body was found, and one of them identified appellant, although, on being pressed for a definite statement, he would only say that in his judgment it was appellant, or he thought it was appellant. Another witness saw appellant go into his home early in the morning, and before it was hardly daylight, and he remained a few minutes and came out, apparently having changed his clothing. In brief, the evidence is about as indicated above, although much detail has been omitted.

Counsel for appellant very earnestly argues that there was not sufficient evidence to take the case to the jury. He first argues that the corpus delicti must be established by proof before there can be a conviction. Undoubtedly this is correct. Corpus delicti means that a crime has been committed by some one, and, in cases such as this, the murder has two components—death as a result and the criminal agency of another as the means. Unless both of these are established, there can be no conviction. Lee v. Commonwealth, 155 Ky. 62, 159 S. W. 648; Levering v. Commonwealth, 132 Ky. 666, 117 S. W. 253, 136 Am. St. Rep. 192, 19 Ann. Cas. 140; Roberson on Criminal Law, sec. 282, p. 1779.

The facts set out above show beyong all question that a crime had been committed, and that death was the result of the crime. It is faintly argued that Jarrell ran his automobile off the road and was thrown out of it and slid over the rock into the river. That theory will not account for the blood on the floor of the automobile. Neither will it account for the severe blow over the eye, on the left side of the head and on the back of the skull.

It is necessary to establish that there has been a criminal death before there should be an inquiry into the question of the guilt of any person. Unless the crime is established, guilt cannot be placed on any individual. The proof in this case established the commission of a crime and also death as a result of the crime.

Having thus established the commission of the crime, the commnowealth proceeded in an effort to establish the criminal agency of appellant as the means. It is required that, when the corpus delicti is attempted to be shown by circumstantial evidence, it must be so established as to exclude all uncertainty or doubt from the minds of the jury. This does not mean that each particular circumstance must be of a conclusive character, but, all combined, must produce the same degree of certainty as positive proof. There must be established such circumstances as from which the jury may draw a reasonable inference that a crime has been committed. The identity of the accused with the perpetrator of the offense should be established to the satisfaction of the jury beyond a reasonable doubt.

Motive, when established, is a link in the chain forming a series of events which may identify the perpetrator of the crime. Proof of motive alone is not sufficient to establish the guilt of the accused. Day v. Commonwealth, 173 Ky. 269, 191 S. W. 105. To establish motive is to establish a starting point from which a series of events may be built up leading from the motive to the crime. Motive is established in this case. Appellant had taken from Jarrell his wife, or, at least, he had shown that he desired her, and that he was paying her such attention as a man should not pay to a married woman under the circumstances established in this case. He had proclaimed his love for her and his desire to possess her. He had threatened to take the life of Jarrell because he expected Jarrell to do him injury on account of his relationship with Jarrell's wife.

Motive having been established, it was necessary for the commonwealth to go further and show that appellant was the perpetrator of the crime, and in this case there was no attempt to establish his guilt other than through circumstances. It was necessary to show that the accused was present at the time of the commission of the crime. As a circumstance, it was first shown that threats had been made; it was shown that appellant had pro-

vided clothing for Mrs. Jarrell, and had stated that he was going to Canada, and that he expected to take a woman with him; it was shown on the night of the murder that appellant followed the car of Jarrell as it was driven about the camp; they were seen together about an hour before the crime was committed; their automobiles were seen within one-half mile of the place of the crime about 30 minutes before the crime was committed; it was established that appellant was seen driving from the direction of the place where the crime was committed within a few minutes after its commission; it was established that appellant went to his home and changed his clothing, or at least some part of it, and this was very early in the morning. It is true that these are circumstances which are all denied by appellant, except he admits that he did change his trousers after he went to his home. These facts were sufficient to establish circumstances from which the jury could infer that appellant was present when the crime was committed.

The testimony of witnesses tends to show that some of the wounds on the head of Jarrell could have been made by a black-jack, and appellant was the owner of a black-jack. It was established by the evidence that the injury on the side of the head was caused by a blow of a pistol, and it was established that appellant was the owner of three pistols, one of which was a heavy pistol with which the blow could have been inflicted. The means by which the crime was committed were shown to have been available to appellant. It is argued by counsel for appellant that any arresting officer in the commonwealth had the means available to inflcit the injury on Jarrell, and that is probably true, but no other officer is shown to have had a motive for the commission of the offense, nor is it shown that any other officer having such means available was about the place of the crime at the time of its commission.

Counsel for appellant states that the liberty of the accused should not be determined by guess, surmise, or suspicion, and that he should only be convicted, if at all, on evidence, and that evidence means something of substance and relevant consequences, and not the making of something out of nothing. Evidence was so defined in the case of Gay v. Gay, 183 Ky. 238, 209 S. W. 11. The circumstances established here amount to more than a

surmise or suspicion. They constitute something of substance and relevant consequence.

It is also argued that the evidence presented could be harmonized with the innocence of the appellant as easily as with his guilt, but we do not think so. It does not present two states of fact under one of which the accused would be guilty and under the other of which he would be innocent, as was the case in Meredith v. Commonwealth, 192 Ky. 378, 233 S. W. 792. If the circumstances disclosed to the jury by the proof were true, the mind is forced to the conclusion that appellant was in the vicinity of the crime at the time of its commission; that he had the motive to commit it and the means to be used in carrying out the motive. This is true, allowing appellant every reasonable doubt and surrounding him with the presumption of innocence.

It is urged with earnestness that the admission of a letter purported to have been written by appellant to the wife of Jarrell was error. The wife of Jarrell identified the handwriting as that of appellant, and also identified a part of the subject-matter as an answer to a letter which she had previously written to him. This letter was not delivered to Mrs. Jarrell, but was filched away from appellant in some way before the actual delivery. He denied that it was in his handwriting. The evidence was competent to show motive; it is filled with protestations of love; it points out many ways that she could meet him without arousing suspicion, and refers to their amours in language not to be misunderstood. The letter is long. A few quotations from it are a fair index to its full contents. At one place he said: "Dear, any old time you will be mine I will be waiting for you. I can never forget the happiness I had when I had you in my arms all to myself and those kisses you gave me the other day will never be forgotten." And again: "Sweetie if you care one-half as much for me as I do you will be mine one of these days when I can sit and tell you how well I love you and not haft to write it on paper." And again: "Dear I have dreamed of you every night since you came to Majestic. You are not off of my mind a minute during the day, thinking of the good time I have seen with you when I was sleeping in your arms dreaming sweet dreams. I hope to sleep in your arms again some old day, other words, any time you say so." And again: "Dear, the woman I have

now I care no more for her than I do for some one I never knew. You are all I love as the old saying you can't love but one and I know you are all the one I love. And if I don't get you it won't be my fault for I will always keep trying until death." And again: "I remain yours for ever until death. I hope to chance to see you soon. I can meet you up behind the water tank any night if you say so, no one would ever see us up there." His conclusion was, "To the one I hope to call mine some day for keeps." This letter not only shows motive, but it shows a determination on the part of appellant to possess himself of this woman. It shows a wild infatuation, which might reasonably lead to murder, if murder stood between him and the object of his illicit love.

The appellant attempts to explain some of the circumstances, and he denies others. He claims that, when he was ready to leave the dance and went down to get his car, it was gone, and that, while he was looking for it, some one returned it. This was at 4 o'clock in the morning, and he admits that he took possession of his car at that time. It was about 4 o'clock that it was seen with Jarrell's car opposite the mouth of Poplar creek, a half mile above the place of the crime. It was 4:30 when others saw the car traveling from the direction of the place where the crime was committed.

It is the established rule in this state to submit a case to the jury when there is any competent evidence of a probative nature tending to establish guilt, though the preponderance be to the contrary. Commonwealth v. Stringer, 195 Ky. 717, 243 S. W. 944. It is thoroughly established by this court that the guilt or innocence of the defendant is a question for the jury, when there is substantial evidence tending to show his guilt. Anderson v. Commonwealth, 196 Ky. 30, 244 S. W. 315. Under our system of government, the law has very wisely provided that the jury shall find what the truth is from the facts presented, and this court should not invade the province of the jury, if there were facts as a basis for its finding. On the whole case, we find that the trial court was careful to protect all of the rights of the appellant, and no error prejudicial to him is found in the record.

Judgment affirmed.