## Blanton v. Commonwealth.

(Decided October 28, 1932.)

W. R. PRATER for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Ed Blanton and Hayes Blanton, his son, under an indictment charging them with the willful murder of Leonard McKenzie, were tried and convicted, and their punishment fixed at life imprisonment in the penitentiary. Ed Blanton died a few weeks after his trial, and Hayes Blanton prosecutes this appeal. His counsel candidly and frankly concedes that the record is unusually free of errors, but insists that the evidence is not sufficient to sustain the verdict, and this is the sole ground relied upon for a reversal of the judgment.

Ed Blanton lived in Magoffin county on Paint Lick, a tributary of Paint creek. His son, Hayes Blanton, was married and lived a few miles away. Ed Blanton's nearest neighbor was Millard Blanton, whose home was about 150 yards from the Ed Blanton house. Leonard McKenzie had married a daughter of Millard Blanton; he and his wife had separated but had not been di-

vorced. About a month before his death he visited at the home of his father-in-law, and while there became enamored of Clara Blanton, daughter of Ed Blanton and sister of appellant. After his return to his home at Ashland, Ky., he wrote a letter to Clara Blanton in which he asked her to meet him in Paintsville on the following Wednesday. This letter was intercepted by Ed Blanton and was never delivered to his daughter. On the Wednesday referred to in the letter, McKenzie appeared at Millard Blanton's home and remained there until the following Sunday, the day on which he was killed. It is apparent from the record that Ed Blanton and appellant and other members of the family were bitterly opposed to and determined to break up the love affair between Clara Blanton and the deceased. On Thursday night after Clara Blanton had disappeared from her father's home, Ed Blanton, Hayes Blanton, and two of the latter's younger brothers were seen near the Millard Blanton home. They were armed and in the presence of a number of witnesses threatened to kill McKenzie if he attempted to leave the house.

Clara Blanton left her father's home on Thursday evening and went to the home of Herbert Blanton, a cousin. Appellant found her there on the next day and took her to his home. She left her brother's home early Sunday morning, probably with the intention of meeting the deceased at a church on Paint creek where religious services were to be held during the afternoon. The deceased borrowed a mule from his father-in-law to ride to the church, which was about 3½ miles distant. The mule was about a mile down the creek below the Blanton homes, and, when the deceased left Millard Blanton's house, Ed Blanton, armed with a high-powered rifle, followed him. The deceased saddled and bridled the mule and rode away without being molested. Ed Blanton returned to his home, and shortly thereafter appellant arrived and informed his father that Clara Blanton had disappeared early that morning. They at once mounted two mules and rode to Hade Blanton's, who lived on a road along which the deceased must travel in going to the church on Paint creek. They hitched their mules at the barn, went to the house, where Ed Blanton procured a shotgun, which belonged to him and which he had left there a few days before, and they then walked across the fields toward the point on the road where the body of McKenzie was

later found. About fifteen minutes after they left, Mc-Kenzie was seen riding along the road in front of the Hade Blanton house. In a few minutes shotgun and pistol shots were heard, and immediately after the shooting appellant and his father were seen coming from the place where McKenzie was killed. They never mentioned the shooting to any of the persons present at Hade Blanton's, but told them they were going to Rock House to buy a cow and rode away. A number of persons went to the scene of the shooting immediately and found McKenzie's body lying in the road. He had been shot twice with a shotgun at close range. One charge of shot had entered the left side of his face and one charge had struck him in the hip. One bullet had passed through his body.

Appellant and his father admitted the killing, but claimed that it was done in self-defense. They testified that they went to the place where the killing occurred with no expectation of meeting the deceased, but for the purpose of examining a roadway where they had been hauling coal with a view to improving it, and that after they reached the road they met the deceased. Appellant asked him concerning the whereabouts of his sister, whereupon deceased cursed him, drew a pistol, and began shooting. Appellant testified that when the deceased fell to the ground his pistol fell out of his hand and appellant picked it up. The pistol was not produced at the trial, and there was evidence for the commonwealth to the effect that the deceased had no pistol and was unarmed when he was killed. The weeds were mashed down on either side of the road directly opposite the point where deceased was shot, and there was ample evidence from which the jury might infer that he was shot without warning.

Appellant admitted that his father was armed with a shotgun and that he was armed with a pistol and that both of them fired at the deceased. While there were no eyewitnesses to the shooting except appellant and his father, there were sufficient circumstances contradicting their version of the affair to take the case to the jury and to warrant the jury in disregarding their claim of self-defense. The appellant has had a fair trial, and the verdict was fully authorized by the evidence.

Judgment is affirmed.