## Lacey v. Commonwealth.
(Decided Nov. 24, 1933.)

420

THOS. D. HIRSCHFIELD and LAWRENCE RIEDINGER, Jr.,
for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON
RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

On October 14, 1925, the appellant, Dan Lacey, was indicted by the grand jury of the Campbell circuit court charged with the willful murder of Mary Massie. Upon his trial therefor at its July term, 1933, he was convicted of the crime of manslaughter and condemned to serve a sentence of eighteen years in the penitentiary. Hence this appeal, wherein a reversal is asked, first, because it is complained the court erred in overruling appellant's motion for a peremptory instruction, which he insists should have been sustained, for the reason (a) that the commonwealth failed to prove the venue, (b) that it failed to prove the corpus delicti, or that an offense was committed, and (c) because it failed to prove that the Dan Lacey indicted was the same person tried, because there was no testimony connecting the appellant with the alleged offense; second, that the court erred in admission of evidence; and third, that the verdict of the jury was so flagrantly against the weight of evidence as to shock the conscience.

The evidence shows that about midnight of September 27, 1925, the Newport police department received a call that a shooting had occurred on the Fourth street bridge, to which it immediately responded, when Mary Massie was there found lying about midway of the bridge or just a little beyond its center towards Covington. She was, when found by the officer, unconscious and fatally wounded by a gunshot in her forehead, and was at once removed to the hospital, where

she died on October 1st following, without ever regaining consciousness or making any statement. There were no eyewitnesses to the facts and circumstances under which this fatal wound was received by her, but, upon investigation made of the homicide, evidence was found that the appellant and deceased, Mary Massie, had been going, if not living together; and further that the appellant, on the night decedent was shot and just before the shot was fired, had been seen to go with another upon this bridge from the Newport side towards Covington or in the direction of the place thereon where decedent was found lying, and that the appellant immediately returned after the pistol shot was heard, and was seen and recognized by the witness to leave the bridge at Newport. Also a gun was found the following morning under the Newport end of the bridge, near that bank of the river. The pistol was blood-stained, and showed that one of its five loads had been fired, and was of .32 caliber, similar to that of the weapon used in shooting decedent.

Dan Lacey was not apprehended in the county or community after his charged shooting of Mary Massie until about eight years later, when on June 2, 1933, he went to the Newport police headquarters, it appears, to procure a letter which he expected to be left there for him, when he was recognized and arrested on the indictment theretofore returned against him in 1925, for the offense as set out above. It further appears that, during the appellant's absence from Campbell county after the shooting of Mary Massie, he had lived at Detroit, Mich., and that, upon being there convicted and sentenced for the offense of manslaughter, he had changed his name to the alias of James Jackson. The proof for the commonwealth as to a confession is as given in evidence by Lieut. Johns of the Newport police department that, when appellant called at police headquarters on June 2, 1933, to inquire if a letter had been left there for Dan Lacey, he was told that there was, and he was asked if he were Dan Lacey, to which appellant answered, ''Yes''; that the officer then said, ''Why you are the man that shot the woman on the bridge some years ago, ain't you?'' To which the appellant answered, ''Yes.'' When the officer said, ''If I am not mistaken there is a warrant here for you,'' and took him to the commonwealth attorney's office, where

the officer was informed there was on file an indictment against Dan Lacey for the murder of Mary Massie. When the officer asked Lacey, "Is that the name of the woman you shot on the bridge?" he answered, "Yes." The appellant denied that he had made this confession to Officer Johns, stating that he had only answered that he knew he was wanted at Newport for murder. Appellant's confession to the homicide, as testified by Johns, was corroborated by Edward Hamilton, district detective, who, being called in rebuttal, testified that he was in the commonwealth attorney's office upon the occasion when Johns and the appellant, Lacey, were there, and heard Lacey there admit to Officer Johns that Mary Massie was the name of the woman he had shot on the bridge.

W. P. Holland, a city detective of Newport, also testified for the commonwealth that he had known the appellant, Dan Lacey, for years while serving as an officer in Newport, and that previous to his charged shooting of Mary Massie upon the bridge in September, 1925, he knew that she and the appellant went together, if they did not then live together, and that Dan Lacey was then living in Newport, and that he saw him there at that time running around joints, 'and had seen him about 9 or 10 o'clock come over the bridge, on the night when deceased, Mary Massie, was there later shot. Also Albert Coles testified for the commonwealth that he lived in Covington, and that about midnight of September 27, 1926, he was standing talking with his brother-in-law, Will Todd, near the Newport end of this bridge, when he saw the appellant, Dan Lacey, pass them and go upon the bridge, walking towards Covington; that a short while after he had passed them he heard a shot fired, just after which he saw Dan Lacey returning and run back off the Newport end of the bridge.

We will now consider appellant's first assignment of error, wherein he contends that the trial court erred in overruling his motion for a peremptory instruction, upon the ground that the court was without jurisdiction to try the offense, in that the commonwealth had failed to show that the offense charged was committed in Campbell county, Ky. In support of this he relies upon section 18 of the Criminal Code of Practice, providing that "the local jurisdiction of circuit courts * * * shall

be of offenses committed within the respective counties in which they are held''; and further on the case of Com. v. Ward, 185 Ky. 295, 215 S. W. 31, wherein this Code provision was construed and applied.

While we fully approve the holding as one properly made in that case, yet it is easily distinguishable, in its facts, from those found in the instant case, and therefore is not in point nor applicable to the question of venue here raised. In the Ward Case, while the jurisdiction of the trial court was involved, it was contested upon other grounds than the question as to the county in which the alleged offense had been committed, that is, whether in Harlan or Rockcastle county, to which it was sent for trial, and therefore the opinion of the court in holding under said section 18 that the Rockcastle circuit court was without jurisdiction to try the offense, committed in Harlan county, we deem is not here applicable nor controlling of the question here presented,. and growing out of a very different state of facts.

In the instant case the evidence clearly shows that the location of the offense charged was somewhere upon the Fourth street bridge, and which bridge the evidence shows connects the cities of Newport and Covington, where it spans the Licking river, which there constitutes the boundary or division line between Campbell and Kenton counties.

While there is some question here left by the evidence as to just where or on what side of the central or middle point of this bridge the charged shooting and wounding of the decedent occurred, that is, as to whether it was committed within the Campbell or Kenton county side of the river, it does not follow from this, as appellant contends, that such uncertainty as to county should control the venue of the offense, or defeat the jurisdiction of Campbell county. We are therefore unable to concur with appellant's insistence that section 18 of the Code is applicable, as we conclude that the question of venue, arising on this entirely different situation of fact then existed in the Ward Case, is controlled not by section 18 but by other provisions of the Code and statute properly provided for such different situation. By section 20, Criminal Code of Practice, it is provided:

"If a river be the boundary between two counties, the criminal jurisdiction of each county shall embrace offenses committed on the river."

While in section 1143, Kentucky Statutes, it is provided:

"In all cases where any part of a river, water, water-course, highway, road or street, shall be the boundary line between two counties, the courts * * * and all circuit and county officers of both such counties, shall have concurrent jurisdiction in all cases over the whole extent of such parts of said river," etc.

And further again by section 1146, Kentucky Statutes, it is provided:

"When it is a matter of doubt, in the opinion of the court, in which of two or more counties the offense was committed, the court of either in which the indictment is found shall have jurisdiction of the offense."

The question of the venue of the homicide here involved, it would thus appear, clearly comes within these cited provisions of Code and statute, from which it results that the circuit court of Campbell county was thereunder vested with jurisdiction of the offense, and therefore did not err in assuming it.

The appellant by counsel next contends the judgment was prejudicially erroneous, for the further reason, he argues, that the commonwealth wholly failed to prove that any offense was committed or that is, that the corpus delicti was not established by its evidence.

It is stated in 16 C. J. sec. 1578, p. 771, that "corpus delicti" may be defined as the fact that a crime actually has been committed. As applied to a particular offense, it means the actual commission by some one of the particular crime charged; also it states that corpus delicti is a compound fact made up of two things: (1) The existence of a certain act or result forming the basis of a crime charged; and (2) the existence of a criminal agency as a cause of this act or result, and that "the facts which form the basis of the corpus delicti must be proved by either direct or presumptive evidence * * * and conviction can not be sustained unless the corpus delicti is clearly established." To like effect see Levering v. Com., 132 Ky. 666, 117 S. W. 253, 136 Am. St. Rep. 192, 19 Ann. Cas. 140. Also section 240, Cr. Code of Practice, is to the effect that, as stated in text, extrajudicial admissions, declarations, or confes-

sions of the accused are not of themselves sufficient to establish the corpus delicti, although they may be considered in connection with other independent evidence in determining whether the corpus delicti is sufficiently proved. It is not essential that the corpus delicti should be established by evidence independent of that which tends to connect accused with its perpetration; the same evidence which tends to prove the one may also tend to prove the other, so that the existence of the crime and the guilt of defendant may stand together inseparable on one foundation of circumstantial evidence. See Laughlin v. Com., 37 S. W. 590, 18 Ky. Law Rep. 640; Johnson v. Com., 81 Ky. 325; Com. v. Murphy, 109 S. W. 353, 33 Ky. Law Rep. 141; Blankenship v. Com., 228 Ky. 830, 16 S. W. (2d) 478, 480. In this latter case there was no confession, but was upon facts somewhat similar, and, as here, was one where there was only circumstantial evidence tending to show the defendant's connection with guilt of the crime. There the court, in disposing of defendant's contention, there made, as here, said:

"Counsel for appellant very earnestly argues that there was not sufficient evidence to take the case to the jury. He first argues that the corpus delicti must be established by proof before there can be a conviction. Undoubtedly this is correct. Corpus delicti means that a crime has been committed by some one, and, in cases such as this, the murder has two components—death as a result and the criminal agency of another as the means. Unless both of these are established, there can be no conviction. Lee v. Com., 155 Ky. 62, 159 S. W. 648; Levering v. Com., 132 Ky. 666, 117 S. W. 253, 136 Am. St. Rep. 192, 19 Ann. Cas. 140; Roberson on Criminal Law, sec. 282, p. 1779. * * *

"It is necessary to establish that there has been a criminal death before there should be an inquiry into the question of the guilt of any person. Unless the crime is established, guilt cannot be placed on any individual. * * *

"It is required that, when the corpus delicti is attempted to be shown by circumstantial evidence, it must be so established as to exclude all uncertainty or doubt from the minds of the jury. This does not mean that each particular circumstance

must be of a conclusive character, but, all combined, must produce the same degree of certainty as positive proof. There must be established such circumstances as from which the jury may draw a reasonable inference that a crime has been committed. The identity of the accused with the perpetrator of the offense should be established to the satisfaction of the jury beyond a reasonable doubt."

So it may be conceded, as above stated, that, unless the commonwealth has introduced some competent evidence, direct or circumstantial, to show both the commission of the crime charged, and also tending to show appellant's criminal, causal connection therewith, it would fail to establish the essential elements of the crime, indispensable to sustain the conviction therefor, and therefore, if the commonwealth so failed, the jury should have been directed to find the appellant not guilty.

For determining whether or not there was in the instant case any evidence to support these propositions, constituting such proof as above declared necessary to sustain appellant's conviction, we will now consider what evidence the commonwealth introduced in proof of the corpus delicti or killing of the decedent, Mary Massie, and also in establishing the identity of the accused as the criminal agent therein. It is testified by both Johns and Hamilton that the appellant voluntarily confessed in June, 1933, that he was the Dan Lacey wanted under indictment in Campbell county for the murder of Mary Massie in September, 1925, and further voluntarily admitted that Mary Massie was the name of the woman he had then shot on the bridge. These answers, it was testified, were voluntarily made to the questions then asked appellant as to this matter, when put under arrest. The authorities clearly establish the rule that the confession of an accused out of court is always competent evidence against him if voluntarily made when the accused was not influenced to make it by "flattery of hope, or the torture of fear." Roberson's New Criminal Law, sec. 1812; Bennett v. Com., 242 Ky. 244, 46 S. W. (2d) 84. In the instant case, there was no evidence or claim made whatever of any duress, pressure, or mistreatment of the accused employed in securing his confession, but that the state-

ments were voluntarily made by him.    Farley v. Com.,. 165 Ky. 600, 177 S. W. 431.

Further, as to the identity of the accused with the Dan Lacey indicted, the positive evidence is to the effect that he had formerly lived in this community and had been well known for years by the officer W. P. Holland, and who further testified that he had during such times, before the homicide, seen appellant about Newport in company with the decedent.    Also that he had seen the appellant in the neighborhood of the Fourth street bridge about 9 or 10 o'clock of the evening before the decedent was later, about midnight, found lying thereon, shot and fatally wounded; and, while no witness testified to seeing the shot fired that inflicted the fatal wound, or to seeing the accused shoot her, there is yet ample evidence found in the testimony of the seemingly reluctant witness, Albert Coles, to the effect that, just before he and his brother-in-law heard the firing of this shot, and while they were standing near the Newport entrance to this bridge about midnight, the accused, together with another colored man, was seen and recognized by them as he passed on to the bridge going towards Covington, just after which they heard a shot fired, when shortly thereafter they again saw the accused hurriedly coming back towards them from the bridge, returning to Newport.    Certainly all this evidence, as to these facts, was sufficient as tending to show appellant's commission of the charged offense, when considered all together and in connection with accused's confession, to establish circumstances from which the jury could have inferred that appellant was present upon. the bridge when the crime was committed and possessed of both the motive and means for committing the homicidal offense with which charged.    The testimony of these witnesses detailed circumstances creating more than a mere surmise or suspicion of the accused's confessed guilt, but constituted something of probative substance and relevant consequence.

It is a well-established rule of this state to submit a case to the jury when there is any competent evidence of a probative nature conducing to show the guilt of the accused; as in such case, even though the preponderance be to the contrary, the guilt or innocence of the defendant is for the jury where there is any substantial

evidence of guilt. Com. v. Stringer, 195 Ky. 717, 243 S. W. 944; Finney v. Com., 190 Ky. 536, 227 S. W. 999; Anderson v. Com., 196 Ky. 30, 244 S. W. 315.

We have noticed the further alleged errors complained of, in argument of learned counsel for defendant, in the admission of testimony, but do not deem such contention of sufficient merit or importance to further extend the opinion in discussing them. After a careful examination of the record, we find, on the whole case, no reason for disturbing the judgment.

Judgment affirmed.