# Lickliter v. Commonwealth.

(Decided Sept. 25, 1934.)

C. R. LUKER for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

On a former trial of this prosecution, Lickliter was convicted and his punishment fixed at five years in the State Reformatory. On an appeal to this court the judgment was reversed and the prosecution remanded with directions to grant him a new trial. On a second trial, he was convicted and his punishment fixed at eight years in the reformatory. Hence this appeal.

The opinion on the first appeal, 249 Ky. 95, 60 S. W. (2d) 355, 356, is the law of the case. Helton v. Commonwealth, 254 Ky. 290, 71 S. W. (2d) 625.

The sole question now presented is: Is the verdict of the jury flagrantly against the evidence, such as to entitle him to reversal? In our former opinion, we stated:

"The question whether the verdict is flagrantly against the evidence is a close one, but, inasmuch as errors in the trial require a reversal of the judgment, we have concluded it well to express no opinion upon the point. * * * The court overruled the motion for a peremptory instruction to find the defendant not guilty. Of this the appellant now complains. He did not rest his case upon the commonwealth's evidence, which was obviously insufficient

to connect the accused with the crime, but proceeded to introduce his defense, which admitted the killing and sought to justify it. So the motion and the case must now be considered on the entire record.''

In the opinion the evidence of both the commonwealth and Lickliter is elaborately stated. An examination of our statement of it will disclose the commonwealth on the first trial utterly failed to connect Lickliter with the act of killing, and that until the evidence in his behalf was introduced it was not established he had committed the act of killing the deceased.

On the trial in which the judgment was rendered, from which this appeal was taken, the evidence in behalf of the commonwealth established that the deceased, Cloyd Bowling, had been shot and killed and that Lickliter had admitted killing him by shooting him with a pistol. With these facts established it cannot be said there was no evidence of his guilt. His admission that he had killed Bowling made it incumbent upon him to testify, or excuse his act by evidence, for it is an established rule, where there is any evidence, however slight, tending to show the guilt of the accused, the case should go to the jury. Simmons v. Commonwealth, 207 Ky. 570, 269 S. W. 732; Blanton v. Commonwealth, 245 Ky. 546, 53 S. W. (2d) 952; Jackson et al. v. Commonwealth, 248 Ky. 47, 58 S. W. (2d) 263, 264; Fleming v. Commonwealth, 219 Ky. 697, 294 S. W. 153.

Lickliter testified that until Cloyd Bowling was shot and killed there had never been any trouble between them; Bowling had been keeping company with his sister, Alice, and had often been at the home of the accused and the latter at the home of Bowling. On the Sunday evening before the killing, he received information at his home that his sister, Alice, was out with Cloyd Bowling. And about 7 or 8 o'clock at night he went alone to look for his sister and met her and Bowling in the road a short distance from his (Lickliter's) home. At this point we revert to the accused's own language: ''I walked up and I knew them, and I says to my sister, 'Alice, what are you doing out here, mother needs you at home, she is sick.' She was crying and he (Bowling) shoved her over in the briars and said 'God Damn you, none of you are going.' He said the undertaker will pick you up here on the ground, and then he started

to get his gun and I beat him to it and killed him and I am sorry I did it.'' ''He got his gun part of the way out, the best I could see.'' ''I fired two shots.'' ''I left just as soon as I fired the shots and got my sister out of the briars.'' ''I did not know'' ''he was shot and killed at that time.'' He claims Bowling had a pistol in his right front pocket and drew his hand to get it when he (Lickliter) went for ''his.'' ''Bowling was going for his gun,'' at the time he shot him. In response to the question, ''Had he [Bowling] ever got his gun out until you killed him?'' Lickliter answered: ''No, I can't state whether he got it out or not. I don't know that.'' ''I didn't see his gun, I just seen him coming up with something in his hand.'' ''I thought I saw him going for his gun.'' I was ''sure he went for it.'' He admitted Bowling did not strike him, but stated: ''I shoved him off of me once, when he came up there once and shoved my sister in the briars and I said 'lets go home.' '' He said he did not take time to see if he had killed Bowling because he ''wanted to take his sister home.'' When he fired the shots Bowling just staggered off.'' He admitted that he returned home and imparted to no one the information that he had fired shots at Bowling. He was soon thereafter arrested and failed to inform the officer that he had shot Bowling. The first time he told any one he had shot Bowling was ''on the witness stand in the examining trial,'' two or three days after the killing. Neighbors of Bowling and Lickliter, within a few minutes after the shooting, went to Bowling, and found him lying ''angling'' in and across the road leading from Mrs. Sells, ''going out towards Sinking,'' ''with his feet together,'' ''his arms folded across his breast,'' and his head ''over his shoulder.'' They examined the body for wounds and described them thus:

''A scar on one or the other of his cheeks; on his cheek bone a little blue-black place, no hide bursted, but it was blue and a skinned place on his chin and a bullet wound about two inches from the center near his heart; * * * and the shot went over his heart on the right side and the bullet wound was two inches from his heart, near the center.''

The evidence disclosed that Bowling and the sisters of Lickliter spent Saturday night roaming the streets of the village where they resided until after daylight

Sunday morning, when the oldest sister returned to the home where she was engaged as a servant, leaving her sister Alice and Bowling, who departed for the woods and the fields where they spent the entire day and up to 7 or 8 o'clock at night, when Bowling was shot and killed by Lickliter. It is fair to Lickliter to say his sisters claim Bowling had a pistol and by threats and intimidation compelled them to remain with him; Alice, up to the time of the killing.

A very compelling motive of Lickliter to kill Bowling is disclosed by the evidence. As was stated in Jackson et al. v. Commonwealth, supra:

"It is often that the commonwealth is not able to produce an eyewitness to a crime, but the story of the defendant goes uncontradicted by verbal testimony. But, where he admits the homicide and undertakes to justify it and there are circumstances tending to disprove the defendant's story, the case is one for the jury."

The jury had before it the story of the accused admirably corroborated by his sister Alice, which, if believed by it, warranted a verdict of acquittal. It was established without contradiction that the point where Bowling's body was found was at a curve in the road— a secluded place—surrounded by small bushes and briars which prevented persons approaching that point from the direction leading to and from it, seeing the road where the body was found. The scar on the cheek (the blue-black place) and the skinned place on Bowling's chin, as well as the secluded place in the road, where the shooting occurred, are convicting circumstances, tending strongly to establish the accused's guilt. The jury being the judges of the facts and the credibility of the witnesses, it was exclusively its province to give such weight to the testimony of the witnesses as it deemed proper, and in doing so it was its undoubted right to evaluate the verbal testimony of the witnesses in the light of the attending circumstances and the physical facts. It was entirely with the jury to accept their testimony and give weight to it, considering the existence of the wounds on the cheek and chin of Bowling in connection with the fact the killing occurred at a secluded point in the road.

The applicable and controlling law of this phase of the case is well stated in Fleming v. Commonwealth, 219

Ky. 697, 294 S. W. 153; Blankenship v. Commonwealth, 228 Ky. 830, 16 S. W. (2d) 478; Beach v. Commonwealth, 240 Ky. 763, 43 S. W. (2d) 6; Simmons v. Commonwealth, 207 Ky. 570, 269 S. W. 732; Blanton v. Commonwealth, 245 Ky. 546, 53 S. W. (2d) 952; Jackson v. Commonwealth, 248 Ky. 47, 58 S. W. (2d) 263.

Perceiving no error prejudicial to the substantial rights of the accused, the judgment is affirmed.