## Commonwealth v. Gross.

(Decided Jan. 11, 1938.)

J. A. SMITH, Commonwealth's Attorney, and J. H. ASHER and WILL C. HOSKINS for appellant.

ISAAC TURNER for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Certifying the Law.

Edward Gross was indicted jointly with Chania Hall Cornett and Virgia Hoskins of the crime of the willful murder of Chester Morgan in the Leslie circuit court. On the trial of the case a severance was demanded and Edward Gross was tried. At the conclusion of the evidence of the commonwealth, on the motion of the defendant's attorney, an instruction was given by the court directing that the jury return a verdict of not guilty, which was done. Whereupon the commonwealth, under sections 335-337, Criminal Code of Practice, appealed to this court for a certification of the law.

Twelve witnesses testified for the commonwealth, but most of their testimony was unimportant and threw very little light upon the facts of the killing. The evidence to be considered is quite brief and in some instances conflicting. It is to the effect that at the home of Chester Morgan, a conflict occurred in which Chester Morgan, Adrian Hall, Chania Hall, who at that time was Adrian Hall's wife, and who has since married a man by the name of Charles Cornett, and is now Chania Hall Cornett, and Virgia Hoskins, were engaged in a quarrel, "scuffle," or fight, resulting in the death of Chester Morgan and Adrian Hall.

The evidence is to the effect that the body of Chester Morgan on being examined contained a wound that entered at the "back of the neck and came out here in front." Also, there was a dent upon the top of his head that indicated that he had been struck hard enough to mash in the skull. He was barefooted at the time; his feet and legs were bruised and injured in such a way that indicated that he had been kicked or trampled upon. There were also wounds upon his face. There was also evidence that the shooting occurred in one room of his house, and some other testimony that it occurred upon the outside. However, this testimony was produced by witnesses that did not see the difficulty at all, but only heard the noise of the quarrel and the shooting, and viewed the body after death. Virgia Hoskins, a codefendant herein, testified as to the actual shooting. She

was the former wife of Chester Morgan, deceased. She claimed that she knew Edward Gross; that she saw him strike her husband one time in the head with a pistol after he was shot; that when he did so, she said at the time this: "Lord, have mercy, quit hitting him, he is already shot." She further stated that when Edward Gross struck her husband with the pistol, he was alive. She further stated that when her husband was struck with the pistol by Gross, he had been shot by Chania Hall, who is now Chania Hall Cornett, and one of the defendants herein; that he was shot in the back of the neck and it came out in front; that after he was shot, the deceased said to her: "Run in the house to the baby"; that Edward Gross gave him the lick on the head within a few seconds after he was shot; that he then staggered and fell out on the ground and died.

This, in substance, is all of the direct testimony as to the cause of Chester Morgan's death. There was no denial that it occurred otherwise than in the way and manner related by Virgia Hoskins. We think the court committed an error in granting peremptory instructions after such testimony had been offered to the jury.

It is an accepted rule of this court that, where there is any evidence, however slight, to show the guilt of the accused, the case should be submitted to the jury. Simmons v. Commonwealth, 207 Ky. 570, 269 S. W. 732; Blanton v. Commonwealth, 245 Ky. 546, 53 S. W. (2d) 952; Commonwealth v. Remley, 257 Ky. 209, 77 S. W. (2d) 784.

It is insisted that as Morgan was shot by Chania Hall Cornett, before he was struck on the head by Edward Gross, the ball entering at the back of the neck and passing through to the front, was enough to indicate that the death of Morgan was caused by the pistol shot and not by the wound upon the head. There is no evidence as to which wound actually produced the death.

In the case of Bennett v. Commonwealth, 150 Ky. 604. 150 S. W. 806, 808, 43 L. R. A., N. S. 419, Joe Bennett and Maynard Bennett were indicted of the joint murder of William Lawson. No one saw in that instance the shooting that caused the death of Lawson, but after the difficulty between them Lawson was found to have been shot, and died within a few minutes. It was in evidence that both Joe Bennett and Maynard Bennett, his brother, were engaged in the shooting be-

fore it was over, and were both jointly indicted for the killing; but the evidence failed to show which one of the Bennetts shot and killed him. In that case, it was insisted that a peremptory instruction should have been given, because there was no evidence to show what shot killed Lawson, nor if Joe Bennett shot Lawson, that such shooting caused or hastened his death. In fact, there was no evidence to show which brother's shot caused the death. In that case, we said:

"In other days, when the punishment of crime was hampered far too much by legal refinements and abstruse learning, there would have been a place, perhaps, for the argument; but it can find no place now. Reason and justice have superseded these impractical and much abused rules of former days. These brothers, according to the testimony, both shot Lawson in the one encounter. The law will not stop, in such a case, to measure which wound is the more serious, and to speculate upon which actually caused the death. In many such cases the commonwealth would be helpless; for each defendant would go free because it could not be proven against him that his wound was the fatal one. Whether one actually inflicts the fatal wound, or contributes to or hastens the death in some minor way, he is guilty of the crime. And whether he hastens the death must be for the jury."

In the instant case the witness, Virgia Hoskins, states that after Chester Morgan had been shot, she saw Edward Gross strike him with a pistol, which was a deadly weapon, upon the head, which produced what the witness stated, a "mushy" place in the head; and further stated that at the time he was struck he was not dead, but directed her to go into the house and look after the baby, and then staggered off of the porch and died.

Therefore, based upon the authorities herein given, the court should have refused a peremptory instruction.

Wherefore, the law is accordingly certified.