**James Harris COLLINS, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 1, 1974.

Rehearing Denied May 10, 1974.

**44**

W. Anthony Todd, Lexington, for appellant.

Ed W. Hancock, Atty. Gen., Thomas R. Emerson, Asst. Atty. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

James Harris Collins appeals from a judgment of the Fayette Circuit Court which sentenced him to life imprisonment pursuant to a verdict finding him guilty of aiding and abetting James Harvey Hendren in the murder of Mary Louise Burrell.

Collins' first contention is that the evidence did not establish that the offense was committed in Fayette County, wherefore the Fayette Circuit Court did not have venue of the prosecution. The evidence was that Miss Burrell was a maid in the employ of Mr. and Mrs. Harry Rosenberg at their residence in Lexington, which is in Fayette County. She surprised Collins and Hendren in the act of burglarizing the residence, whereupon they forced her to accompany them in their automobile when they departed. The testimony of the witnesses for the prosecution was that Miss Burrell's dead body was found in a ravine in *Jessamine County*, on the west side of Tate's Creek Pike, at a point where Fayette and Jessamine Counties adjoin each other; at that point the center line of Tate's Creek Pike is the boundary line between the two counties; the top of the ravine is about ten feet from the edge of the road; blood was found around three feet from the edge of the pavement, on the Jessamine County side of the road; Miss Burrell had a bullet wound in her head from which she had died quickly, and she had two other bullet wounds in her body. The testimony of the prosecution witnesses was supplemented by a written statement made by Collins, which was read in evidence. In the statement Collins said that as the car with the two men and Miss Burrell in it, being driven by Hendren, was "going around a curve down on Tate's Creek Pike," Collins reminded Hendren that the road ended at a ferry, "so he ran around this other curve and he stopped." Hendren told Miss Burrell to get out of the car; she did so and "was going towards the back of the car" when Hendren shot her from his position in the driver's seat, whereupon "she wobbled and tried to run and fell." Thereupon, Hendren "jammed the car in park, jumped out, left the door open and ran around and shot her" again. Hendren then dragged the woman to the ravine and pushed her over the edge. Upon returning to the car, Hendren turned it around in the narrow road by a series of forward and back movements.

From Collins' statement it is clear that the killing occurred *in the road area*, thus bringing the case within KRS 452.520, which provides:

"Where any part of a river, watercourse, highway, road or street constitutes the boundary line between two (2) counties, the venue is in both counties for the prosecution of crimes committed over the whole extent of such part of the river, watercourse, highway, road, street or any island in the river."

This statute was held applicable in a case where a shooting occurred on a bridge between Campbell and Kenton Counties, in Lacey v. Commonwealth, 251 Ky. 419, 65 S.W.2d 61.

■ Slight evidence, and slight circumstances warranting reasonable inferences, are sufficient to prove venue. Hendron v. Commonwealth, Ky., 487 S.W.2d 275; Willis v. Commonwealth, Ky., 339 S.W.2d 174. It is our conclusion that the evidence in the instant case was sufficient to put venue in Fayette County.

■ Collins next contends that the instruction on aiding and abetting willful murder, under which he was convicted, was insufficient in that it did not require the jury to find that the aiding and abetting was done willfully, feloniously and with malice. The instruction did expressly require the jury to find that the aiding and abetting was done willfully, and it made reference back to the immediately preceding instruction, on murder, which spelled out the requirement of "malice aforethought." We think that here, the same as in White v. Commonwealth, Ky., 394 S.W.2d 770, the reference back to the preceding instruction was such as to make known to the jury that malice was a required element of the offense of aiding and abetting murder. Actually, there was no real issue as to malice, because under Collins' own statement the killing was done in cold blood. Collins did not claim that there was any circumstance to reduce the killing to manslaughter; he simply denied that he participated at all in the killing. The instructions were not required to use the word "feloniously." Parrott v. Commonwealth, 221 Ky. 202, 298 S.W. 675.

■ As his third contention Collins argues that he was entitled to an instruction on what he maintains is the "lesser included offense" of being an accessory after the fact to murder. The truth is that the offense of being an accessory after the fact is *not* a lesser degree of the offense of murder, and an instruction on that offense cannot properly be given under an indictment that does not specifically charge that offense. See Reed v. Commonwealth, 270 Ky. 447, 109 S.W.2d 1198; Cissell v. Commonwealth, Ky., 419 S.W.2d 555.

■ Finally, Collins maintains that it was error to proceed with the trial in his absence, which resulted from his escaping jail on the night following the first day of the trial. He does not dispute the proposition that a felony trial may proceed, up to and including the verdict, when the defendant voluntarily absents himself after the trial has commenced. See RCr 8.28; Helton v. Stivers, Ky., 392 S.W.2d 445. And he makes no serious complaint of the trial's being proceeded with on the day immediately following his escape, when his whereabouts was unknown. But he argues that when it was reported to the court, on the morning of the third day, that he had been apprehended and was in police custody in West Virginia, the court should not have proceeded with the trial, because at that point his absence was no longer "voluntary," he being in police custody. We find no merit in that argument. There is no basis for a determination that his apprehension in West Virginia prevented him from voluntarily returning to attend his trial in Kentucky; it is more probable that the apprehension simply prevented him from prolonging his absence from the trial. The fact that the police were in a position to drag him back to the trial, in handcuffs, did not make his absence pending that event any less voluntary.

The judgment is affirmed.

All concur.